1997 ND 230

Donald HANSON, Jr. and Nicole Hanson, Plaintiffs and Appellants,

v.

CINCINNATI LIFE INSURANCE COMPANY, an Ohio Corporation, Defendant and Appellee.

Civil No. 970247.

Supreme Court of North Dakota.

Dec. 2, 1997.

Randall S. Hanson (argued), of Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, for plaintiffs and appellants.

Thomas L. Zimney (argued), of Vaaler, Warcup, Woutat, Zimney & Foster, Grand Forks, for defendant and appellee.

MESCHKE, Justice.

[¶ 1] Nicole Hanson and Donald Hanson, Jr., the beneficiaries of a term life insurance policy issued by Cincinnati Life Insurance Company to their deceased father, appealed a summary judgment dismissing their lawsuit against Cincinnati for death benefits under the policy. We hold, as a matter of law, that Cincinnati's policy with Donald Hanson, Sr., lapsed and that Cincinnati was not precluded from treating the policy as lapsed. We affirm the summary judgment.

[¶ 2] In 1981, Inter–Ocean Insurance Company, the predecessor to Cincinnati, issued a $200,000 renewable term life insurance policy to Hanson, and he paid quarterly premiums for that coverage. On October 16, 1994, Cincinnati advised Hanson his quarterly premium for the policy would increase to $364 for the payment due December 16, 1994. Hanson did not pay that premium by the due date, or within a 31–day grace period allowed by the policy.

[¶ 3] After the expiration of the grace period, Cincinnati sent Hanson a "lapse notice late payment offer" that advised him the policy had "lapsed,"[1] but extended a late-payment offer. The offer said "payment must be received during the lifetime of the insured and before the offer expires date on this notice." The offer designated February 1, 1995, as its expiration date.

[¶ 4] Hanson wrote a check, dated January 30, 1995, for the $364 premium, but the beneficiaries produced no evidence to show when he mailed that check. By letter dated February 5, 1995, Cincinnati informed Hanson his policy had "lapsed for nonpayment of premium due on 12/16/94; and the valuable coverage it provided has ceased." Cincinnati's letter explained it was "concerned with [Hanson's] current loss of protection. Your policy included a valuable reinstatement provision. To receive your reinstatement information, please complete the section below and return it to us as soon as possible.... When we receive your request, it will have our immediate attention."

[¶ 5] According to Cincinnati, on February 14, 1995, it received Hanson's $364 check with a payment slip from the "lapse notice late payment offer" and subsequently coded the check for placement in a suspense account. Cincinnati cashed Hanson's check and sent him a February 17 letter stating: "Thank you for sending us $364.00. Unfortunately, your policy has already lapsed. In order to consider reinstatement according to policy provisions, we must also have ... [a]n additional premium $364.00 to pay the policy to 6–16–95 ... [and][r]eturn of the enclosed reinstatement form as initial evidence of insurability."

[¶ 6] Cincinnati informed Hanson by letter dated March 3, 1995, it had not yet received the completed reinstatement form and the

---

1. Lapse means the automatic expiration of a policy by its own terms at the end of the policy period. *See* 2 Couch on Insurance § 30:2 (3rd ed.1996); *Hunter v. West Am. Ins. Co.,* 95 Ill. App.3d 108, 50 Ill.Dec. 611, 419 N.E.2d 719 (1981).

additional $364 premium. Cincinnati advised Hanson, "[i]f you are still interested in reinstatement, please complete these requirements and return them to our office as soon as possible. If the requirement(s) are not received by 3–17–95, we must close our file and return any money submitted to us. Please remember that your policy is not in force at this time. If you have any questions, or if I may be of some assistance, please let me know."

[¶ 7] According to Cincinnati, it began closing Hanson's file on March 17, 1995, and requisitioned a $364 refund check payable to him. Cincinnati advised Hanson by letter dated March 21, 1995, it had not received the reinstatement requirements and was closing his file and issuing a $364 refund check. Hanson died on March 21, 1995.

[¶ 8] Cincinnati refused to pay death benefits to the beneficiaries. They sued Cincinnati, alleging they were entitled to benefits under several different legal theories including breach of contract, waiver, equitable estoppel, accord and satisfaction, negligence, and bad faith. Cincinnati asserted the policy had lapsed for nonpayment of the premium and claimed it was not precluded from denying coverage. The trial court granted Cincinnati summary judgment, concluding as a matter of law that Cincinnati had not breached its insurance contract with Hanson; it had not waived its right to deny coverage; it was not estopped from denying coverage; it had not accepted an accord and satisfaction; and it was not negligent and had not acted in bad faith.

[¶ 9] The beneficiaries appealed, contending the trial court erred in ruling, as a matter of law, they were not entitled to benefits under several legal theories.

[¶ 10] We review this case under the summary judgment standards of NDRCivP 56. As we explained in *Nodak Mut. Ins. Co. v. Heim*, 1997 ND 36, ¶ 8, 559 N.W.2d 846, summary judgment is a procedure for deciding an action without a trial if, after viewing the evidence in the light most favorable to the party opposing the motion and giving that party the benefit of all favorable inferences that can reasonably be drawn from the evidence, there is no genuine dispute as to

either the material facts or the inferences to be drawn from the undisputed facts, or if only a question of law is involved.

[¶ 11] A party resisting summary judgment may not simply rely upon pleadings or unsupported conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means that raises a dispute of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by citing the page and line in depositions or other documents containing evidence that disputes a material fact. *Kummer v. City of Fargo*, 516 N.W.2d 294, 297 (N.D.1994). If a party resisting summary judgment fails to present pertinent evidence on an element essential to a claim, it is presumed no such evidence exists. *Id.* Disputes of fact become questions of law if reasonable persons could draw only one conclusion from the evidence. *Peterson v. Ramsey Cty.*, 1997 ND 92, ¶ 8, 563 N.W.2d 103. Here, the only conclusion reasonable persons can draw from the evidence is that Hanson's policy lapsed and that Cincinnati was not precluded from treating the policy as lapsed.

[¶ 12] The beneficiaries contend Cincinnati waived its right to deny coverage under the policy by unconditionally accepting and retaining Hanson's January 30, 1995 check with knowledge it was made in response to the late-payment offer. They argue waiver is a question of fact, and the trial court erred in granting Cincinnati summary judgment on waiver. Cincinnati responds it conditionally accepted Hanson's check under circumstances clearly showing it did not intend to waive the lapse.

[¶ 13] Payment of premiums is a condition precedent to the continuation of insurance coverage, and coverage ordinarily lapses if the insured fails to pay premiums. *Sjoberg v. State Auto. Ins. Ass'n of Des Moines, Iowa*, 78 N.D. 179, 48 N.W.2d 452, 453 (1951). However, an insurer may waive the effect of an insured's failure to pay a premium. *Id.* Waiver is a voluntary and intentional relinquishment or abandonment of a known advantage, benefit, claim, privilege, or right. *Peterson v. Front Page, Inc.*,

462 N.W.2d 157, 159 (N.D.1990); *Sjoberg,* 48 N.W.2d at 454. A waiver may be established either by an express agreement, or by inference from acts or conduct. *Sjoberg,* 48 N.W.2d at 458. The existence or absence of waiver is generally a question of fact. *Peterson,* 462 N.W.2d at 159; *Beauchamp v. Retail Merchants' Ass'n Mut. Fire Ins. Co.,* 38 N.D. 483, 165 N.W. 545, 549 (1917). As we explained in *Beauchamp,* 165 N.W. at 549, if the circumstances of a claimed waiver are admitted or clearly established and reasonable persons can draw only one conclusion from those circumstances, the existence or absence of waiver is a question of law.

[¶ 14] Cincinnati's policy with Hanson defined its "term period" as the time when the policy was kept in force by payment of premiums. The policy allowed a 31–day grace period for premium payments. Hanson's policy lapsed when the 31–day grace period expired on January 16, 1995, because, by then, Hanson had failed to pay the premium due on December 16, 1994. Cincinnati notified Hanson his policy had "lapsed" when it sent him the "lapse notice late payment offer." Although Cincinnati was under no obligation, it also extended Hanson a late-payment offer that required the late payment to "be received during the lifetime of the insured and before the offer expires date on this notice." The late-payment offer designated February 1, 1995, as its expiration date, and said if payment was not received within that time, it was deemed not to have been made.

[¶ 15] The beneficiaries claim there is a factual dispute about whether the late-payment offer expired by its own terms on February 1, or by Cincinnati's internal operating procedure on February 4. We need not decide that dispute, however, because assuming Cincinnati's offer expired on February 4, it required the late payment to be "received" by that date, and the beneficiaries have presented no evidence to raise an inference that Cincinnati "received" the late payment by February 4.

[¶ 16] The beneficiaries rely solely on the January 30, 1995 date of Hanson's check to assert he complied with the terms of the late-payment offer. The beneficiaries produced no evidence to show when Hanson mailed that check, and they have cited no evidence other than the date of the check to show Cincinnati "received" the premium by February 4. Cincinnati's February 5 letter to Hanson indicates it had not received the premium by that date. Cincinnati presented evidence it received Hanson's check on February 14. The beneficiaries did not respond with any specific evidence to raise an inference Cincinnati received the premium by February 4. Their conclusory assertion Cincinnati could have received the premium by February 4 does not raise a factual inference sufficient to preclude summary judgment. *See Kummer,* 516 N.W.2d at 297–98 (conclusory, unsupported allegations are insufficient to preclude summary judgment). We hold the beneficiaries failed to raise a genuine dispute of material fact that Cincinnati "received" the premium before the late-payment offer expired.

[¶ 17] The beneficiaries nevertheless assert that, by unconditionally accepting and retaining Hanson's check without any contemporaneous communication with him, Cincinnati waived its right to deny coverage under the policy. They also argue Cincinnati waived its right to demand a reinstatement application completed by Hanson and his servicing agent because Cincinnati terminated its relationship with Hanson's servicing agent and failed to provide a replacement. Their argument, however, ignores the effect of Cincinnati's unambiguous correspondence with Hanson.

[¶ 18] When Cincinnati had not timely "received" Hanson's premium, its February 5 letter explicitly informed him:

> Your policy lapsed for nonpayment of premium due on 12/16/94; and the valuable coverage it provided has ceased.
>
> We are pleased to have served you as one of our policyholders and are concerned with your current loss of protection. Your policy included a valuable reinstatement provision. To receive your reinstatement information, please complete the section below and return it to us as soon as possible. Enclosed is a self-addressed envelope for your convenience. When we receive your request, it will have our immediate attention.

If you have any questions concerning your policy or about the reinstatement process, please contact your agent or our office.

[¶ 19] After receiving Hanson's check on February 14, Cincinnati sent Hanson a February 17 letter that said: "Thank you for sending us $364.00. Unfortunately, your policy has already lapsed. In order to consider reinstatement according to policy provisions, we must also have ... [a]n additional premium $364.00 to pay the policy to 6–16–95[and] ... [r]eturn of the enclosed reinstatement form as initial evidence of insurability." The beneficiaries have produced no evidence to show Hanson responded to that letter.

[¶ 20] Cincinnati subsequently sent Hanson a March 3 letter stating:

As of this date, we have not received the requirement(s) indicated below. Your policy cannot be considered for reinstatement until we receive:

___√___ The completed reinstatement form(s).

___√___ The premium of $364.00 due.

If you are still interested in reinstatement, please complete these requirements and return them to our office as soon as possible. If the requirement(s) are not received by 3–17–95, we must close our file and return any money submitted to us.

Please remember that your policy is not in force at this time.

If you have any questions, or if I may be of some assistance, please let me know.

There is no evidence Hanson responded to that letter. By letter dated March 21, Cincinnati informed Hanson it had not received the requested reinstatement requirements and it was closing his file and enclosing a refund check for $364.

[¶ 21] The unconditional acceptance of a premium after the expiration of a grace period is universally recognized as a waiver of an insurer's right to treat a policy as lapsed for nonpayment of the premium. *Crum v. Prudential Ins. Co. of Am.*, 356 F.Supp. 1054, 1057 (N.D.Miss.1973). There is no waiver, however, if the insurer conditionally accepts and retains a late premium subject to reinstatement, and the insurer's acceptance and placement of a check in a suspense account pending reinstatement of the policy does not constitute a waiver if the acceptance is clearly conditional. *Id.* Here, Cincinnati's acceptance and retention of Hanson's late premium was conditional.

[¶ 22] Cincinnati's correspondence with Hanson unequivocally informed him that the policy had "lapsed," the coverage had "ceased," the policy was "not in force," there was a "loss of protection," and that he could "apply for reinstatement" by submitting completed "reinstatement forms." Cincinnati did not unconditionally accept Hanson's premium when it cashed his check; instead, it unambiguously informed him within three days that, "[u]nfortunately, [his] policy has already lapsed" and, "[i]n order to consider reinstatement," he would have to provide an additional $364 premium and a "reinstatement form as initial evidence of insurability." *See Crum*, 356 F.Supp. at 1058 (insurer's unambiguous conditional response to late premium payment within four days was prompt and refuted argument insurer equivocated in declaring lapse). Cincinnati's letter unmistakably informed Hanson about the reinstatement requirements.

[¶ 23] Cincinnati's failure to designate a new servicing agent for Hanson's policy does not negate the plain language of its correspondence with Hanson, nor does that failure evidence a voluntary and intentional relinquishment of Cincinnati's right to require a reinstatement application from Hanson. The only reasonable conclusion from Cincinnati's correspondence with Hanson is that Cincinnati did not voluntarily and intentionally relinquish its right to treat Hanson's policy as lapsed and to require reinstatement. On this record, we conclude there are no genuine disputes of material fact about waiver.

[¶ 24] Relying on the same factual circumstances, the beneficiaries also contend there are genuine disputes of material fact about whether Cincinnati was estopped from treating the policy as lapsed.

[¶ 25] The doctrine of equitable estoppel is codified in NDCC 31–11–06:

*Estoppel by declaration, act, or omission.* When a party, by that party's own declaration, act, or omission, intentionally and de-

liberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

In *Matter of Estate of Helling*, 510 N.W.2d 595, 597 (N.D.1994), we outlined the elements of equitable estoppel:

> To establish equitable estoppel, a plaintiff must show, on the part of the defendant:
> "(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the [defendant] subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the [plaintiff]; and (3) knowledge, actual or constructive, of the real facts." ...
> The plaintiff also must show, on her own part:
> "(1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the [defendant]; and (3) action or inaction based thereon, of such a character as to change the position or status of the [plaintiff], to his injury, detriment, or prejudice."

[¶ 26] Cincinnati's correspondence with Hanson clearly indicated the policy had "lapsed for nonpayment of premium," the "valuable coverage it provided has ceased," and the policy was "not in force." That correspondence also clearly informed Hanson about Cincinnati's reinstatement requirements for the lapsed policy. Estoppel is ordinarily a question of fact. *Peterson Mechanical, Inc. v. Nereson*, 466 N.W.2d 568, 571 (N.D.1991). Here, however, reasonable persons could not disagree that Cincinnati's conduct did not constitute a false representation and was not calculated to convey a false impression that Hanson had insurance coverage. The only conclusion supported by this record is that Cincinnati was not estopped from asserting that Hanson's policy lapsed.

[¶ 27] The beneficiaries assert Cincinnati's acceptance and retention of Hanson's premium constituted an accord and satisfaction. An essential element of an accord and satisfaction is an agreement evidencing mutual assent. *Peterson v. Ramsey Cty.*, 1997 ND 92, ¶ 10, 563 N.W.2d 103. Negotiation of a check without evidence of mutual assent does not constitute an accord and satisfaction. *Id.* at ¶ 12. Although accord and satisfaction is ordinarily a question of fact, *id.* at ¶ 7, reasonable persons could not disagree that, in this case, Cincinnati's conditional acceptance and retention of Hanson's check did not constitute an agreement evidencing a mutual assent to an accord and satisfaction. Rather, Cincinnati plainly informed Hanson the policy had lapsed and reinstatement was conditioned on supplying a "reinstatement form as initial evidence of insurability."

[¶ 28] The beneficiaries assert Cincinnati's conduct supports inferences of negligence and bad faith. In *Seifert v. Farmers Union Mut. Ins. Co.*, 497 N.W.2d 694, 697 (N.D.1993), we declined to extend the tort concept of negligence to an insured's claim that an insurer negligently breached an insurance contract. *See also Pioneer Fuels, Inc. v. Montana–Dakota Utils.*, 474 N.W.2d 706, 710 (N.D.1991) (breach of contract does not, by itself, support claim for negligence). We have held, however, an insurance company that solicits and receives a completed application for insurance is under a legal duty to promptly consider the application and notify the applicant of its action. *Mann v. Policyholders' Nat. Life Ins. Co.*, 78 N.D. 724, 51 N.W.2d 853, 856 (1952); *Bekken v. Equitable Life Assurance Soc'y*, 70 N.D. 122, 293 N.W. 200, 209–210 (1940). Under *Mann* and *Bekken*, an insurance applicant may sue an insurer for negligence in failing to act on a completed application within a reasonable time. This case does not involve a completed application for reinstatement, and our decisions in *Bekken* and *Mann* are not applicable to these beneficiaries' negligence claim.

[¶ 29] We have also held an insurer has a duty to act fairly and in good faith in its contractual relationship with its policyholders. *Hart Const. Co. v. American Family Mut. Ins. Co.*, 514 N.W.2d 384, 391 (N.D. 1994); *Bender v. Time Ins. Co.*, 286 N.W.2d 489 (N.D.1979); *Corwin Chrysler–Plymouth v. Westchester Fire Ins. Co.*, 279 N.W.2d 638, 643 (N.D.1979). The test for bad faith is

whether the insurer acts unreasonably in handling an insured's claim by failing to compensate the insured, without proper cause, for a loss covered by the policy. *Seifert,* 497 N.W.2d at 698, *quoting* William M. Shernoff et al., *Insurance Bad Faith Litigation* § 5.02[2] (1992). As *Hart,* 514 N.W.2d at 391, explains, whether an insurer has acted in bad faith in refusing to pay a claim is ordinarily a question of fact.

[¶ 30] Viewing the evidence in the light most favorable to these beneficiaries, however, the only conclusion supported by this record is Cincinnati did not act in bad faith in its relationship with Hanson. This is not a case where there is evidence an insurer acted unreasonably in failing to compensate an insured, without proper cause, for a loss covered by the policy. Rather, Hanson's policy lapsed, and despite notice from Cincinnati, he failed to comply with the requirements for reinstatement of the policy. We conclude the trial court properly granted summary judgment on the beneficiaries' bad faith claim.

[¶ 31] We affirm the summary judgment.

[¶ 32] VANDE WALLE, C.J., and MARING, NEUMANN, and SANDSTROM, JJ., concur.

