1999 ND 51

**NORWEST MORTGAGE, INC., successor by merger to Director's Mortgage Loan Corporation, Plaintiff and Appellee,**

v.

**Jerry NEVLAND, Melody Nevland, Defendants and Appellants,**

**Tax Commissioner of the State of North Dakota, and any persons in possession, Defendants.**

**No. 980266.**

Supreme Court of North Dakota.

March 18, 1999.

Deborah J. Carpenter, of Carpenter Law Offices, Bismarck, ND, for defendants and appellants.

Paul M. Hubbard, of Conmy, Feste, Hubbard, Corwin & Brust, Ltd., Fargo, ND, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Jerry and Melody Nevland appeal from a summary judgment granting Norwest Mortgage, Inc. (Norwest), foreclosure of its mortgage on a residential property owned by the Nevlands. We affirm.

I

[¶ 2] On June 3, 1994, the Nevlands executed a promissory note in the principal sum of $53,599 to Directors Mortgage Loan Corporation. The note was secured by a mortgage on residential property in the city of Bismarck, and later assigned to Norwest. The Nevlands made their last payment in August 1997, and on March 2, 1998, Norwest served a notice of intention to foreclose the mortgage. Norwest commenced the foreclosure action by summons and complaint on April 8, 1998. The Nevlands timely answered, raising as an affirmative defense "their inability to pay ... due to the negligence and inattentiveness of other parties or governmental units, and not due to actions of their own."

[¶ 3] On June 4, 1998, Norwest moved for summary judgment. In their response, the Nevlands again raised their "negligence of others" defense, and for the first time raised the affirmative defenses found in N.D.C.C. ch. 28–29, commonly known as the "confiscatory price defenses." After a hearing on the matter, the district court granted Norwest's summary judgment motion. On July 27, 1998, the district court entered its recitation of undisputed facts, conclusions of law and order for judgment, concluding: "The confiscatory price statutes do not apply to 'city owned' property and apply only in agricultural settings for the purposes of assisting farmer-landowners in situations where the state agricultural economy is distressed[,]" and in any event, the "statutes have not been properly plead ... to raise and support an affirmative defense based upon the confiscatory

price statutes." The Nevlands timely appealed.

## II

[¶ 4] Under N.D.R.Civ.P. 56, summary judgment is appropriate if, after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact or conflicting inferences that can reasonably be drawn from undisputed facts, or if only questions of law are involved. *Resolution Trust Corp. v. Gosbee,* 536 N.W.2d 698, 700 (N.D.1995). If the moving party meets its initial burden of showing the absence of a genuine issue of material fact, the non-moving party may not rely on mere allegations, but must present competent evidence by affidavit or other comparable means creating a material factual dispute. *Id.* Affidavits containing conclusory statements unsupported by specific facts are insufficient to raise a material factual dispute. *Id.* at 701.

[¶ 5] On appeal, the Nevlands urge us to interpret the confiscatory price defenses found in N.D.C.C. ch. 28–29, to apply to this urban, residential mortgage foreclosure. The Nevlands contend the relevant statutes contain general language which supports a broader application than just for the purpose of assisting farmer-landowners.

[¶ 6] The "confiscatory price defense" statutes "were enacted by the Legislature in 1933, in response to the effects of the Great Depression on this state's largely agricultural economy[,]" *Folmer v. State,* 346 N.W.2d 731, 732 (N.D.1984), and are currently codified at N.D.C.C. §§ 28–29–04, 28–29–05 and 28–29–06.[1] These statutes "provide the courts with special equitable powers to protect debtors when the price of agricultural products are below the cost of their production or when the debtor would lose his equity in a home to foreclosure or execution, and further authorize the courts to stay foreclosure proceedings on public policy grounds." *Federal Land Bank v. Lillehaugen,* 404 N.W.2d 452, 456 (N.D.1987).

[¶ 7] While we have not directly addressed whether the confiscatory price defenses apply to foreclosures of urban property owned by non-farmers, we have previously intimated the statutes were intended to protect the farmer-landowner. *See Federal Land Bank v. Thomas,* 386 N.W.2d 29, 31 n. 1 (N.D. 1986) ("We recognize that the object of the Legislature in the enactment of these statutes was to protect farmers during times of economic hardship brought on by the depressed farm economy."); *Heidt v. State,* 372 N.W.2d 857, 861 (N.D.1985) ("The 'confiscatory price defense' was designed to protect the farmer-landowner."). This is fully consistent with the sparse legislative history and well-documented historical background of the confiscatory price defense statutes. *See* 1933 N.D. House Jour. 1265–66 (comments by Representative Herbert Swett) ("Madam

---

1. Sections 28–29–04, 28–29–05, and 28–29–06, N.D.C.C., provide:

 **§ 28–29–04. Power of courts when prices are confiscatory.** Until the price of farm products produced in this state rises to a point to equal at least the cost of production, in comparison with the price of other commodities in general, entering into the business of agriculture, the supreme court of this state and all district and county courts in this state have power, when it is deemed for the best interests of litigants, to extend the time for serving and filing all papers requisite and necessary for the final determination of any cause. Any such court, in like manner, may stay the entry of judgment or the issuance of execution thereon, or may defer the signing of any order for judgment, or may defer terms of court, whenever in the judgment of the court the strictly legal procedure in any cause will confiscate or tend to confiscate the property of any litigant by forcing the sale of agricultural products upon a ruinous market.

 **§ 28–29–05. Courts may delay orders in foreclosures.** Whenever any foreclosure proceeding is pending in any court in this state and the amount of the debt is less than the value of the property involved, and when any order for judgment will have the force and effect of depriving a defendant of his home and confiscating his property, the court may construe further proceedings to be unconscionable, and may delay the signing of such order to such time as it shall deem it advisable and just to enter the same.

 **§ 28–29–06. Public policy.** Any court mentioned in section 28–29–04 may take judicial notice of the situation of producers and laborers when prices of farm products are confiscatory, and upon the ground of public policy may do all things necessary to be done lawfully to carry out the provisions of sections 28–29–04 and 28–29–05.

Speaker, this is one of the few measures aimed to help the farmer by legislative action....."); *Lillehaugen,* 404 N.W.2d at 456 ("These statutes were adopted by our Legislature in 1933 as part of a comprehensive response to issues of farm foreclosure, farm debt, farm debtor relief, and low farm prices during the agricultural and economic crisis of the 1930s.") (citing Sarah M. Vogel, *The Law of Hard Times: Debtor and Farmer Relief Actions of the 1933 North Dakota Legislative Session,* 60 N.D.L.Rev. 489 (1984)). Although we doubt the statutes' application to persons or property not at least peripherally related to agriculture, the issue need not be squarely addressed today because we conclude the Nevlands failed to properly raise a genuine issue of material fact under the statutes.

■ [¶ 8] The Nevlands initially raised the confiscatory price defense in an affidavit submitted with their brief opposing Norwest's summary judgment motion. The only evidence offered to support this defense was Jerry Nevland's affidavit stating he was "familiar with the farming industry, as he has members of his family who are engaged in the same ... [and] the costs of production are greater than the commodity prices at the current time." In *Gress v. Kocourek,* 427 N.W.2d 815, 816–17 (N.D.1988) (citation omitted), we addressed the sufficiency of pleading an affirmative defense under N.D.C.C. ch. 28–29, and noted N.D.R.Civ.P. 8(c) requires a party asserting an affirmative defense "to set forth specific facts showing that there is a genuine issue for trial on that defense." Although trial courts are to adhere to the "strong policy favoring a hearing on the ... confiscatory price defense," conclusory statements about a depressed agricultural economy in an affidavit unsupported by specific facts are insufficient to raise the defense even by "sensitive standards." *Id.* at 817 (internal citations omitted). The Nevland's allegations "that the costs of production are greater than the commodity prices at the current time" are precisely the type of conclusory allegations we have previously held do not sufficiently raise the confiscatory price defenses found in N.D.C.C., ch. 28–29. *Compare Gosbee,* 536 N.W.2d at 701; *Federal Land Bank v. Anderson,* 401 N.W.2d 709,

712 (N.D.1987); *Federal Land Bank v. Bagge,* 394 N.W.2d 694, 696 (N.D.1986); *with Federal Land Bank v. Halverson,* 392 N.W.2d 77, 81 (N.D.1986). The district court correctly determined the Nevlands did not properly raise and support an affirmative defense based upon the confiscatory price statutes. The district court's judgment is therefore affirmed.

[¶ 9] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and KAPSNER, JJ., concur.

