2000 ND 149

**John G. GAROFALO, M.D.,
Plaintiff and Appellee,**

v.

**ST. JOSEPH'S HOSPITAL d/b/a Un-
iMed Medical Center, and QHG of Mi-
not, Inc., Defendants and Appellants.**

No. 20000035.

Supreme Court of North Dakota.

July 26, 2000.

William E. Bergman, Lamont & Skow-
ronek, Minot, for plaintiff and appellee.

Monte L. Rogneby, Vogel Law Firm,
Bismarck, for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] St. Joseph's Hospital Corporation ("Hospital") appealed from a judgment entered after the district court granted summary judgment in favor of John G. Garofalo, M.D. We reverse and remand for trial.

[¶ 2] On December 31, 1995, the Hospital and Garofalo entered into an employment agreement. The agreement extended two years, from January 1, 1996 until December 31, 1997. Garofalo had worked with the Hospital under a previous employment agreement. Under the December 31, 1995, agreement, the Hospital was to pay Garofalo an annualized salary of $180,000 from January 1, 1996 until March 31, 1996. Thereafter, the Hospital was to pay Garofalo an annualized base salary of $120,000 per year, plus 90 percent of any gross receipts above $165,000 per year for services rendered to patients of the Hospital by Garofalo.

[¶ 3] The contract stated "[g]ross receipts shall be reconciled monthly," and "[g]ross receipts shall mean amounts collected by Hospital for physician services to patients for which Employee maintains responsibility and for which there is a customary physician professional fee and is an amount exclusive of contractual adjustments, bad debt, and charity care." Under the agreement, the Hospital paid Garofalo 90 percent of the monthly gross receipts collected above $13,750. The $13,750 figure is arrived at by dividing $165,000 with 12 months.

[¶ 4] In September 1997, the Hospital notified Garofalo it would not renew the Agreement at the end of the term. The Hospital wrote to Garofalo:

> The purpose of this letter is to inform you that the employment agreement between you and St. Joseph's Hospital d/b/a UniMed Medical Center termi-nates December 31, 1997. UniMed Medical Center does not plan to renew this agreement.
>
> As a courtesy to you, we are willing to extend your employment agreement until March 31, 1998. We will not, however, extend the agreement as it relates to medical directorship duties as defined in Exhibit A of the Agreement. The Medical Directorship duties will terminate December 31, 1997. Office space and current staffing levels and services will be available to you through March 31, 1998.

[¶ 5] The Hospital paid Garofalo's base salary and 90 percent of the gross receipts collected by the Hospital through March 31, 1998, but paid Garofalo nothing for gross receipts collected after March 31, 1998. Garofalo sued the Hospital, arguing he was entitled to 90 percent of gross receipts collected after March 1998. Both sides moved for summary judgment. The district court denied the Hospital's motion and granted Garofalo's motion, awarding him 90 percent of all gross receipts collected by the Hospital following Garofalo's termination.[1]

I

[¶ 6] The purpose of summary judgment is to allow for the prompt disposition of a case on the merits, without a trial. *Landis v. CNA Ins.*, 1999 ND 35, ¶ 4, 589 N.W.2d 590. Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact or conflicting inferences that can be reasonably drawn from undisputed facts, or if only questions of law are involved. *Norwest Mortgage, Inc. v. Nevland*, 1999 ND 51, ¶ 4, 591 N.W.2d 109. Whether the trial judge properly granted summary judgment is a question

---

1. In its Conclusions of Law, the district court said, "If the parties cannot agree to the amount of compensation to which Dr. Garofalo is entitled, this Court will retain jurisdiction to review any such dispute." The parties agreed to count gross receipts collected by the Hospital through November 1999 and stipulated to a judgment amount of $28,567.72, plus prejudgment interest and costs and disbursements.

of law and is reviewed de novo. *See Landis,* at ¶ 4.

[¶ 7] Construction of a written contract is a question of law. *Kerzman v. North Dakota Workers Compensation Bureau,* 1999 ND 44, ¶ 9, 590 N.W.2d 888. If the intent of the parties can be ascertained from the agreement alone, interpretation of the contract is a question of law. *See* N.D.C.C. § 9–07–04; *Aaland v. Lake Region Grain Co-op., Devils Lake,* 511 N.W.2d 244, 246 (N.D.1994). Thus, an unambiguous contract is particularly amenable to summary judgment. *See Sample v. Kinser Ins. Agency, Inc.,* 700 N.E.2d 802, 804 (Ind.App.1998) (stating "[t]he construction of an unambiguous written contract is generally a question of law for the court, making summary judgment particularly appropriate in contract disputes"). However, if the terms of the contract are ambiguous, extrinsic evidence regarding the parties' intent may be considered, and the terms of the contract and parties' intent become questions of fact. *Aaland,* 511 N.W.2d at 246. When two good arguments can be made for either of two contrary positions as to the meaning of a term in a document, an ambiguity exists. *Thiel Indus. v. Western Fire Ins. Co.,* 289 N.W.2d 786, 788 (N.D.1980).

[¶ 8] The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity. N.D.C.C. § 9–07–02. A contract is interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. N.D.C.C. § 9–07–03. "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others." N.D.C.C. § 9–07–06. A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates. N.D.C.C. § 9–07–12.

[¶ 9] With these principles in mind, we consider the issues raised on appeal in this case.

II

[¶ 10] The Hospital argues its obligation to pay Garofalo terminated when the agreement terminated. The district court concluded the terms of the employment contract entitled Garofalo to compensation based upon amounts collected by the Hospital following termination.

[¶ 11] Garofalo asserts the district court's grant of summary judgment was correct because his incentive compensation pay is analogous to an employee receiving a commission on sales. That is, Garofalo argues he should be paid based on moneys collected after termination, just as an employee who works on commission would be paid for sales occurring before termination, but collected after termination.

[¶ 12] Garofalo points to the language in paragraph 17 of the agreement, which states, "the amount due to Employee upon termination shall be subject to any adjustments provided for by this agreement ...." Garofalo says this language demonstrates amounts collected after termination would have to be taken into account in paying him. However, the agreement never clearly states Garofalo is to receive compensation based on moneys collected after termination of the contract.

[¶ 13] In fact there is evidence to the contrary. The agreement states, "all of the rights and obligations between Hospital and the Employee shall be terminated on the Termination Date." The agreement also provides Garofalo was to be paid throughout "the term of this agreement." The agreement ended by its terms on December 31, 1997 and the Hospital extended the agreement to March 31, 1998.

[¶ 14] Although Garofalo likens his bonus compensation to an employee working on commission, the analogy is not dispositive. First, one working on commission may not be entitled to commissions made before termination if the contract so provides. 27 Am.Jur.2d *Employment Relationship* § 58 (1996). In

*Johnson v. Peterbilt of Fargo, Inc.*, 438 N.W.2d 162, 163 (N.D.1989), this Court enforced an agreement that disallowed an employee's commissions for sales made before termination, but where delivery was after termination. Although Johnson had sold two trucks before his termination, a majority of the Court held the agreement was not against public policy and thus Johnson was not entitled to his commission on those sales. *Id.*

[¶ 15] Second, Garofalo was not paid on a strict commission basis; instead his salary consisted of a base salary ($120,000) and an incentive bonus based on gross receipts. The agreement stated the Hospital owns the revenue generated by Garofalo.

[¶ 16] The agreement is not so clear that as a matter of law Garofalo's right to receive incentive compensation survived termination of the agreement.

### III

[¶ 17] The Hospital argues, alternatively, even if the salary provisions of the agreement survived termination of the agreement, the Hospital does not owe any additional money to Garofalo because the Hospital did not collect more than $13,750 in any month after March 1998. It is undisputed the Hospital did not collect more than $13,750 from Garofalo's services in any single month after March 1998. The district court did not directly confront this issue, but concluded Garofalo was entitled to 90 percent of all gross receipts collected by the Hospital following termination.

[¶ 18] Garofalo asserts the yearly amount of $165,000 ($13,750 monthly) was picked because it represents the Hospital's estimated costs and expenses incurred in employing Dr. Garofalo. When Garofalo's employment terminated, the Hospital no longer incurred expenses associated with his employment. Thus, according to Garofalo, the $13,750 figure is not applicable after termination of the agreement.

[¶ 19] Although Garofalo's argument is reasonable enough, his rationale is not expressed in the contract itself. The agreement states Garofalo is to be paid "an annualized base salary of $120,000.00 per year plus 90% of any gross receipts above $165,000.00 per year for services rendered to individual patients of Hospital by Employee." The agreement goes on to say, "Gross receipts shall be reconciled monthly …." The agreement never states the threshold figure is not taken into account after termination.

[¶ 20] Because the agreement is ambiguous as a matter of law, we cannot conclude the bonus compensation provision survives termination of the agreement, but at the same time the part of the bonus compensation provision requiring a $13,750 threshold figure does not survive termination. Thus, we reverse and remand for trial.

[¶ 21] DALE SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., LAURIE A. FONTAINE, D.J., concur.

[¶ 22] LAURIE A. FONTAINE, D.J., sitting in place of KAPSNER, J., disqualified.