2001 ND 48

**Greg FETCH, Personal Representative of the Estate of Waylin Fetch, Plaintiff and Appellant,**

v.

**Kelly M. QUAM, Defendant,**

v.

**American Hardware Mutual Insurance Company, Intervenor and Appellee.**

No. 20000256.

Supreme Court of North Dakota.

March 7, 2001.

Deborah J. Carpenter, Carpenter Law Offices, Bismarck, ND, for plaintiff and appellant.

David E. Reich, Pearce & Durick, Bismarck, ND, for intervenor and appellee.

KAPSNER, Justice.

[¶1] As personal representative of the estate of Waylin Fetch, Greg Fetch appeals the district court's summary judgment for American Hardware Mutual Insurance Company ("American Hardware") and order dismissing Fetch's complaint that American Hardware breached an implied covenant of good faith and fair dealing with Fetch. We affirm.

I

[¶2] On May 31, 1988, Waylin Fetch was driving a motorcycle which collided with a pickup driven by Kelly Quam, resulting in a fractured vertebra in Fetch's neck. Fetch hired an attorney within days of the accident. In March 1989, American Hardware, the insurance provider for Fetch's father whose policy covered Fetch, settled the property damage claim on Fetch's motorcycle. In April 1990, American Hardware received notification that Fetch was now represented by a different attorney. Fetch commenced a personal injury lawsuit against Quam in November 1990, seeking $450,000 damages. Quam was uninsured at the time of the accident and did not answer the complaint. In December 1990, American Hardware filed a motion to intervene, as a provider of uninsured motorist coverage to Fetch under his father's insurance policy.

[¶3] In August 1991, Fetch filed a motion to amend the complaint against Quam to add a bad faith claim against American Hardware for "unreasonably and arbitrarily denying coverage to [Fetch] and by intervening in this lawsuit and defending [Quam], with whom they have no contractual or other relationship."

[¶4] In September 1991, the district court determined Quam was in default and allowed Fetch to amend his complaint, but severed the bad faith action against American Hardware until Fetch's claim against Quam was resolved. The court also limited American Hardware's appearance to the questions of whether there was negligence on the part of Quam and the extent and amount of damages resulting from the accident. Since Quam was in default, the district court decided contributory negligence would not be in issue at the hearing, because it is an affirmative defense which is waived if not raised by an answer.

[¶5] Waylin Fetch died from leukemia in October 1991. His brother and personal representative, Greg Fetch, was substituted as plaintiff in the lawsuit.

[¶6] In March 1994, after the restricted default hearing, the district court entered judgment for Fetch against American Hardware in the amount of $125,000 for Fetch's injuries, pain, and suffering and $10,697 for Fetch's medical costs. On appeal, we reversed and remanded in *Fetch v. Quam*, 530 N.W.2d 337 (N.D. 1995), concluding American Hardware was an intervenor of right and should have been allowed to show comparative fault by Fetch. On remand, a jury found Fetch 40% at fault for the accident and Quam 60% at fault. The jury awarded Fetch $30,000 in damages. After allocation based on fault, judgment was entered for $18,000, and American Hardware paid the judgment within six weeks.

[¶7] Fetch filed a motion in April 1999 to reinstate the severed bad faith claim against American Hardware, arguing American Hardware breached its implied covenant of good faith and fair dealing by unreasonably and arbitrarily denying coverage to Fetch and by intervening in

Fetch's lawsuit against Quam and defending Quam. The district court permitted Fetch to proceed and set the trial date for July 2000. In May 2000, American Hardware moved for summary judgment, which the district court granted and dismissed Fetch's bad faith complaint. The district court ruled American Hardware's intervention was not evidence of bad faith because this Court had already determined the intervention was proper. The court rejected Fetch's bad faith claim that American Hardware failed to deliver a copy of the insurance policy for a period of days and failed to negotiate a settlement in good faith. The district court held, as a matter of law, an insurance company is not guilty of bad faith for denying a claim when the claim is fairly debatable or if there is a reasonable basis for denying the claim or delaying payment. The court found that over the years American Hardware had made offers of settlement in line with the verdict. In addition, the court determined Fetch did not present any information suggesting American Hardware improperly denied coverage, investigated in bad faith, or fraudulently induced Fetch to delay filing a motion for default judgment against Quam; moreover, the trial court noted, those arguments were anticipated by American Hardware and effectively refuted. Fetch appeals.

## II

[¶ 8] Summary judgment is a procedure for promptly and expeditiously resolving a controversy, without a trial, if the evidence shows there is no genuine issue as to any material fact, or the inferences to be drawn from undisputed material facts, and if the evidence shows any party is entitled to a judgment as a matter of law. *See Mandan Educ. Ass'n v. Mandan Pub. Sch. Dist. No. 1*, 2000 ND 92, ¶ 6, 610 N.W.2d 64; *see also* N.D.R.Civ.P. 56(c). Summary judgment is also appropriate if only questions of law are involved or if the law is such that resolving disputed facts will not change the result, because the facts in issue are not material facts.

*Umpleby v. State*, 347 N.W.2d 156, 159 (N.D.1984). Issues of fact may become issues of law if reasonable persons could reach only one conclusion from the facts. *Mandan*, at ¶ 6. The evidence presented must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which reasonably can be drawn from the evidence. *Id.* Whether the trial judge properly granted summary judgment is a question of law which is reviewed de novo. *Garofalo v. Saint Joseph's Hosp.*, 2000 ND 149, ¶ 6, 615 N.W.2d 160.

[¶ 9] The party seeking summary judgment bears the initial burden of showing there is no genuine dispute regarding a material fact. *Grinnell Mut. Reinsurance Co. v. Farm & City Ins. Co.*, 2000 ND 163, ¶ 18, 616 N.W.2d 353. In response, the party opposing the motion may not simply rely on unsupported and conclusory allegations or denials in the pleadings but must set forth specific facts showing there is a genuine issue for trial. *Id.; see also* N.D.R.Civ.P. 56(e). The opposing party must present competent admissible evidence, by affidavit or other comparable means, which raises a question of material fact. *Grinnell*, at ¶ 18; *see also Norwest Mortgage., Inc. v. Nevland*, 1999 ND 51, ¶ 4, 591 N.W.2d 109 (determining affidavits which contain conclusory statements, unsupported by specific facts, are insufficient to raise a material factual dispute). If appropriate, the opposing party must draw the court's attention to relevant evidence in the record by setting out the page and line in the evidence raising the material fact issue, because neither the trial court nor appellate court has a duty to search the record for evidence opposing the motion for summary judgment. *Smith v. Land O'Lakes, Inc.*, 1998 ND 219, ¶ 10, 587 N.W.2d 173.

## III

[¶ 10] Fetch argues the trial court erred in granting American Hardware's

motion for summary judgment because there was a genuine issue about material facts, as the record shows American Hardware acted in bad faith by denying insurance coverage in an effort to hinder Fetch's filing of a claim; intervening in the lawsuit between Fetch and Quam, which created a conflict of interest; investigating in bad faith by procuring witnesses against its own insured; delaying action on the claim in an attempt to avoid liability; refusing to pay Fetch's medical bills until ordered to do so; failing to negotiate a settlement in good faith; and serving untimely a motion for summary judgment. Fetch asserts these actions by American Hardware were so numerous as to establish they were pervasive in American Hardware's handling of Fetch's insurance claim.

### A

[¶ 11]   Fetch argues there is a material factual dispute that American Hardware acted in bad faith by unreasonably and arbitrarily denying Fetch had insurance coverage for his motorcycle and by failing to give Fetch a copy of the policy until he was out of the hospital, which hindered Fetch in filing his claim for personal injuries and property damage.   Fetch also contends American Hardware acted in bad faith by refusing to pay Fetch's medical bills after a court determination of liability and damages until ordered to do so.

[¶ 12]   An insurer has a duty to act fairly and in good faith in its contractual relationship with its policyholders. *Hanson v. Cincinnati Life Ins. Co.*, 1997 ND 230, ¶ 29, 571 N.W.2d 363.   This duty of good faith imposed on an insurer, which has its genesis in the contractual relationship between the insurer and its policyholders, is implied by law to include a duty of fair dealing in paying claims, providing defense to claims, negotiating settlements, and fulfilling all other contractual obligations. *See generally Midwest Cas. Ins. Co. v. Whitetail*, 1999 ND 133, ¶ 9, 596 N.W.2d 341; *Hanson*, at ¶ 29; *Dvorak v. Am. Family Mut. Ins. Co.*, 508 N.W.2d 329, 331–32 (N.D.1993); N.D.C.C. § 26.1–04–03 (listing unfair methods of competition and defining unfair or deceptive practices in the insurance business including unfair claim settlement practices if performed with a frequency indicating a general business practice).[1]   The gravamen of the test for bad faith is whether the insurer acts unreasonably in handling an insured's claim. *Hanson*, at ¶ 29.   Whether an insurer has acted in bad faith is ordinarily a factual question to be determined by the trier of fact. *Corwin Chrysler–Plymouth, Inc. v. Westchester Fire Ins. Co.*, 279 N.W.2d 638, 643–44 (N.D.1979).

[¶ 13]   An insurer acts unreasonably by failing to compensate the insured for a loss covered by the policy, unless the insurer has a proper cause for refusing

---

1.  Unfair methods of competition and unfair or deceptive practices involving claim settlement are defined in N.D.C.C. § 26.1–04–03(9), which provides in pertinent part:

Unfair claim settlement practices.   Committing any of the following acts, if done without just cause and if performed with a frequency indicating a general business practice:

a.   Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue.

b.   Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under insurance policies.

c.   Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

d.   Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear.

e.   Compelling insureds to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

. . . .

j.   Failing to affirm or deny coverage of claims within a reasonable time after proof of loss has been completed.

payment. *Hanson,* 1997 ND 230, ¶ 29, 571 N.W.2d 363. In *Hanson,* we concluded the insurer had proper cause to refuse compensation to an insured, and thus acted reasonably, because the insured's policy had lapsed and he failed to comply with requirements for reinstatement of the policy, despite notice from the insurer. *Id.* at ¶ 30. Viewing the evidence in the light most favorable to the insured, we affirmed the trial court's determination the insurer did not act in bad faith and upheld the award of summary judgment. *Id.* Conversely, in *Corwin,* we affirmed a trial court's finding of bad faith by the insurer who had no valid ground to continue to deny liability and refuse compensation under the policy. 279 N.W.2d at 644. We concluded the insurance company's legal defense, formulated only in the late stages of the dispute, was unreasonable because the policy language foreclosed any possibility that insurer Westchester would prevail if litigation ensued. *Id.* We further stated: "We hasten to add that this is not a case in which an insurer, from the outset of the claim controversy, has relied in good faith on an arguable legal defense." *Id.* We emphasized that an insurer who resists and litigates a claim made by its insured is not at peril of breaching its duty to act fairly and in good faith simply by losing the suit or suffering a judgment against it for a larger amount than it offered in payment on the policy. *Id.* at 645.

[¶ 14] An insurer also acts unreasonably by failing to defend an insured who is covered by the policy, unless the insurer has proper cause for refusing to defend. *See Hanson,* 1997 ND 230, ¶ 29, 571 N.W.2d 363. Ordinarily, an insurer has a duty to defend an underlying action against its insured if the allegations in the complaint give rise to potential liability or a possibility of coverage under the insurance policy. *Whitetail,* 1999 ND 133, ¶ 9, 596 N.W.2d 341. In *Whitetail,* we affirmed the trial court's determination the insurer would be required to defend and indemnify both the insured and a person

driving with her permission in a tort action against them, based on the insurance policy provisions. *Id.* at ¶¶ 7, 9; *see also Hart Constr. Co. v. Am. Family Mut. Ins. Co.,* 514 N.W.2d 384, 391–92 (N.D.1994) (holding the insured had a direct contractual duty to defend the insured and remanding for the trial court to consider the merits of the insured's bad faith claim against the insurer). However, a liability insurer's duty to defend its insured exists only if it would be bound to indemnify the insured in case the injured person prevailed on the allegations of the complaint. *Hanneman v. Continental W. Ins. Co.,* 1998 ND 46, ¶ 45, 575 N.W.2d 445. That is, an insurer has no duty to provide a defense in an action that would yield no possibility of liability to its insured. *Ohio Cas. Ins. Co. v. Horner,* 1998 ND 168, ¶ 11, 583 N.W.2d 804. In *Horner,* we affirmed the trial court's holding that the insurer had no duty to defend or indemnify the insured against any action brought against them because the insured's actions were intentional, thereby excluding coverage under the policy. *Id.* at ¶¶ 8, 14; *see also Mead v. Farmers Union Mut. Ins. Co.,* 2000 ND 139, ¶¶ 21–22, 613 N.W.2d 512 (concluding the district court did not err in ruling the insurer had no duty to defend an insured whose acts were intentional, when the policy contained an exclusion of liability for intentional acts and when the issue of whether the insured acted intentionally was res judicata); *Hanneman,* at ¶ 45 (indicating the insurer had no duty to provide a defense in an action that would yield no possibility of liability to its insured due to an agreement releasing the insured from the liability of having to satisfy a judgment for damages).

[¶ 15] Here, the record establishes American Hardware provided Fetch with an additional copy of the insurance policy after his approximately 10–day hospitalization, and American Hardware extended an offer to settle the property damage claim on Fetch's motorcycle in June 1988, one month after the accident. Subsequently, American Hardware settled the property

damage claim on March 22, 1989. On the undisputed facts, American Hardware did not act unreasonably in handling the property damage claim.

[¶ 16] Regarding Fetch's personal injury claim, a chronological review of the evidence shows American Hardware did not unreasonably deny insurance coverage or hinder Fetch's filing of his claim. According to the testimony of a police officer, Quam told the officer he was insured at the time of the accident on May 31, 1988. Within days of the accident, Fetch's first attorney met with American Hardware's adjuster, and the attorney indicated a desire to locate Quam to present a claim to his insurance carrier. The adjuster had a suspicion Quam may be uninsured, but had nothing to substantiate that suspicion. In July and August 1988, the adjuster interviewed three eyewitnesses, who all indicated Fetch's motorcycle was speeding at the time of the accident. The police report also indicated the motorcycle had left a 70–foot skid mark prior to impact. Although Fetch's attorney stated he had witnesses who would testify the motorcycle was not speeding, he never disclosed their identity nor responded to American Hardware's June 1988 and February 1989 offers to settle the property damage claim on the motorcycle. In November 1988, Fetch's father wrote to American Hardware, indicating Fetch's attorney was checking out Quam's insurance. Over a year later, in March 1990, American Hardware received a letter from Fetch's attorney indicating an intention to make a claim under the uninsured motorist coverage of Fetch's policy. However, in a follow-up telephone conversation the attorney admitted to American Hardware he had no basis for asserting Quam was uninsured, other than the fact he could not be located. American Hardware informed the attorney by letter that American Hardware had no basis to indicate Quam was uninsured and the accident investigation indicated Fetch's negligence exceeded that of Quam.

[¶ 17] In April 1990, Fetch's new attorney told American Hardware's adjuster that Fetch had nothing to substantiate the allegation that Quam was uninsured, and the attorney was going to attempt to locate Quam to determine whether he was uninsured. The attorney stated he "did not see where American Hardware was involved at all at that point." In July 1990, the attorney telephoned the adjuster to say he had located Quam, believed he was uninsured, and intended to commence an action against Quam and obtain a default judgment. One week later, the adjuster wrote to the attorney asking for Quam's address so American Hardware could confirm whether he was uninsured, but the attorney responded by threatening a claim against American Hardware of collusion and bad faith interference with Fetch's lawsuit against Quam. A subsequent letter from Fetch's attorney indicated to American Hardware, "The only way we will know [that Quam was uninsured] . . . is to sue Mr. Quam and see who comes to his defense" and invited a settlement offer from American Hardware, "subject to an investigation determining that [Quam] was actually uninsured at that time."

[¶ 18] We conclude reasonable persons could draw but one conclusion from these undisputed facts showing American Hardware initially had no basis to indicate Quam was uninsured, which would trigger American Hardware's coverage under the uninsured motorist provision of Fetch's father's policy, and American Hardware's investigation indicated Fetch's negligence exceeded that of Quam so that Fetch's claim would likely be denied if it was determined Quam was uninsured. Fetch's counsel took the position he would investigate, and that Fetch would not cooperate with the insurer to determine whether Quam was insured; instead, Fetch threatened American Hardware if the insurer continued its investigation. *See Gullickson v. Torkelson Bros., Inc.,* 1999 ND 155, ¶¶ 6, 10, 598 N.W.2d 503 (affirming summary judgment when rea-

sonable persons could draw but one conclusion from the number of undisputed facts and other evidence, as issues of fact may become issues of law for the court to determine, if reasonable persons could reach only one conclusion from the facts). We agree with the trial court that as a matter of law, an insurance company is not guilty of bad faith for denying a claim when the claim is fairly debatable or if there is a reasonable basis for denying the claim or delaying payment. *See Hanson,* 1997 ND 230, ¶ 29, 571 N.W.2d 363 (stating the test for bad faith is whether the insurer acts unreasonably in handling an insured's claim, such as failing to compensate the insured, without proper cause, for a loss covered by the policy); *see also Corwin,* 279 N.W.2d at 644 (concluding the insurer acted unreasonably and in bad faith, but hastening to add this was not a case in which the insurer had relied in good faith on an arguable legal defense).

[¶ 19] Regarding Fetch's allegations that American Hardware refused to pay Fetch's medical bills until court ordered to do so, Fetch supports this allegation by referring to a letter from American Hardware. However, this letter merely indicated the medical records revealed the amount of Fetch's medical expenses were $9,830; Fetch suffered no permanent impairment from the accident; and nothing in the medical records linked Fetch's leukemia to the accident. Because of these facts and the results of the accident investigation, which indicated a substantial amount of causal fault would likely be attributed to Fetch, American Hardware offered $15,000 in settlement. Conclusory allegations of bad faith do not provide sufficient proof that a material fact is still at issue. *See Smith v. Land O'Lakes, Inc.,* 1998 ND 219, ¶ 10, 587 N.W.2d 173 (requiring a party opposing summary judgment to draw the court's attention to relevant evidence by setting out the page and line in the evidence raising the material fact in dispute); *see also Norwest Mortgage, Inc. v. Nevland,* 1999 ND 51, ¶ 4, 591 N.W.2d 109 (deeming conclusory state-

ments, unsupported by specific facts, insufficient to raise a genuine issue of material fact). The letter offered by Fetch provides no factual support for Fetch's assertion American Hardware delayed payment of Fetch's medical expenses.

[¶ 20] Viewed in the light most favorable to Fetch, we conclude the evidence, and all favorable inferences which reasonably can be drawn from the evidence, show no relevant unresolved factual issues as to American Hardware acting in bad faith by allegedly denying insurance coverage or compensation to Fetch or by hindering Fetch's submission of a claim.

### B

[¶ 21] Fetch argues there is a material factual dispute that American Hardware acted in bad faith by delaying action on the claim until it intervened "in the shoes of the defaulting defendant Quam" to avoid liability. Fetch insists American Hardware's intervention in the lawsuit between Fetch and Quam creates a conflict of interest by allowing American Hardware "to argue on both sides of the [liability] fence." American Hardware hired counsel to represent Fetch and separate counsel to intervene. Fetch asserts American Hardware investigated in bad faith by procuring only witnesses and evidence against its own insured Fetch and by "tracking down and promising help to [Quam] who defaulted on [Fetch's] claim."

[¶ 22] We addressed and resolved Fetch's concerns regarding intervention and the conflict of interest implicit in an insurer contesting its own insured's claim when we decided *Fetch v. Quam,* 530 N.W.2d 337 (N.D.1995). Notwithstanding such inherent conflict of interest, we held our procedural rules authorize an intervention of right to protect an interest in the subject of an action. *Id.* at 339; *see also* N.D.R.Civ.P. 24(a) (permitting anyone to intervene in an action if a statute confers an unconditional right to intervene or if the applicant claims an interest relat-

ing to the action, the disposition of which may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties). We concluded that, of course, conflicts of interest exist if an insurer intervenes in an action between its insured and an uninsured motorist and presses all the defenses of the uninsured motorist, but we stated this is similar to the common situation where the carrier has coverage on two insureds involved in the same accident. *Fetch*, at 340. We held the trial court abused its discretion in limiting American Hardware's scope of intervention by refusing to allow inquiry into Fetch's comparative fault. *Id.* at 341. We reasoned unrestricted intervention was appropriate because American Hardware had a right to protect its own interests on the issues of liability and damages arising under the uninsured motorist's provisions of its insurance policy. *Id.* at 338.

[¶ 23] Furthermore, the previous chronological review of the record disclosed no bad faith investigation by American Hardware. Initial reports indicated Fetch's negligence exceeded that of Quam, and American Hardware was acting to protect its interests. American Hardware's investigator interviewed Quam before his deposition, but Quam testified American Hardware never promised him anything for his cooperation in the litigation, other than a statutory witness fee and mileage.

[¶ 24] The record also demonstrates American Hardware did not seek to delay Fetch's action. On November 7, 1990, Fetch's attorney sent to American Hardware a draft of the summons and complaint, which was subsequently served to Quam on November 21, 1990. However, American Hardware did not receive notice of service to Quam until December 18, 1990. American Hardware requested an extension of time to respond, and Fetch agreed to a two-day extension, which was subsequently extended an extra day until December 21, 1990. American Hardware served its motion to intervene on December 20, 1990.

[¶ 25] Our examination of the evidence and inferences from the record, viewed in the light most favorable to Fetch, demonstrates no relevant unresolved factual issues as to American Hardware acting in bad faith by investigating the accident, procuring witnesses in defense of the uninsured motorist Quam, or intervening in the lawsuit. *See Fetch*, 530 N.W.2d at 338–39 (determining American Hardware had a right to protect its own interests on the issues of liability and damages arising under the uninsured motorist's provisions of its insurance policy). An insurer does not act in bad faith by a reasonable investigation of a claim which is fairly debatable. *See Hanson v. Cincinnati Life Ins. Co.*, 1997 ND 230, ¶ 29, 571 N.W.2d 363 (defining the test for bad faith as whether the insurer acts unreasonably in handling an insured's claim). Nor does an insurer act in bad faith by requesting a two-day delay to respond to a complaint, in order to protect its interests under an uninsured motorist policy.

### C

[¶ 26] Fetch argues American Hardware failed to negotiate in good faith regarding settlement. Again, a chronological review of the settlement offers extended by American Hardware, in addition to the subsequent jury verdict, demonstrate the lack of substance in Fetch's arguments.

[¶ 27] Fetch's complaint dated November 7, 1990 requested damages in the amount of $450,000. On December 19, 1990, Fetch made a settlement demand of $250,000. On July 15, 1991, Fetch made his last settlement demand prior to amending his complaint to allege bad faith in the amount of $175,000. In making these settlement demands, Fetch insisted the leukemia was related to the accident, but could not produce any medical support for

his contention. Fetch did not abandon this position until after the 1994 default hearing when the court dismissed his claim for leukemia-related damages. Furthermore, American Hardware's investigation indicated at least a substantial percentage of fault for the accident should be attributed to Fetch. Medical records reported Fetch's special damages for medical expenses were $10,700, and he had made a good recovery from injuries sustained in the accident. American Hardware did make settlement offers to Fetch of $15,000 in July 1991, $25,000 in November 1991 and January 1993, and $35,000 in January 1994, all of which Fetch rejected.

[¶ 28] Under these circumstances, we conclude there is no genuine issue of material fact that American Hardware acted in bad faith by refusing to pay the $175,000 demanded by Fetch to settle his personal injury claims. *See, e.g., Dvorak v. Am. Family Mut. Ins. Co.*, 508 N.W.2d 329, 331–32 (N.D.1993) (concluding there is an implied duty of insurers to negotiate a good faith settlement); *Smith v. Am. Family Mut. Ins. Co.*, 294 N.W.2d 751, 756–58 (N.D.1980) (discussing an insurer's duty to accept reasonable settlements, as included in the implied covenant of good faith and fair dealing between an insurer and insured). We agree with the trial court that in light of the jury verdict awarding damages to Fetch of $30,000, American Hardware had a good faith basis for resisting Fetch's demands for settlement ranging from $450,000 to $175,000. *See Cont'l Cas. Co. v. Kinsey*, 513 N.W.2d 66, 69 (N.D.1994) (concluding an insurer did not breach its implied duty to settle a case when the insurer had a right to reimbursement from the insured). An insurer does not act in bad faith by reasonably refusing to settle a claim, which is fairly debatable as to liability, for amounts demanded by an insured which are not supported by facts regarding damages. *See Hanson v. Cincinnati Life Ins. Co.*, 1997 ND 230, ¶ 29, 571 N.W.2d 363 (defining the test for bad faith as whether the insurer acts unreasonably in handling an insured's claim).

### D

[¶ 29] Fetch's final basis for arguing American Hardware breached its duty of good faith and fair dealing is that American Hardware untimely served a motion for summary judgment of dismissal after a deadline for such motions was proposed by both parties. However, as the district court noted, the parties were required to submit proposed scheduling orders to the district court, but neither party submitted a proposal with a signature line for the court and the proposals were not in the form of a motion. Thus, the district court stated the clerk did not provide the proposals to the district court. The court conceded it should have reviewed the file and entered an order, but failed to do so, and neither party requested an order. The record establishes the timing of American Hardware's motion for summary judgment did not violate any court order, but only proposed scheduling orders of the parties, and the motion was filed sufficiently in advance of trial to allow Fetch reasonable time to respond. Thus, we conclude no genuine issue of material fact was raised that American Hardware filed its motion in bad faith. *See Ingalls v. Paul Revere Life Ins. Group*, 1997 ND 43, ¶ 22, 561 N.W.2d 273 (considering a claim by an insured that an insurer's pleadings and legal strategies evidenced bad faith, because an insurer's unreasonable defense may evidence bad faith).

### IV

[¶ 30] The judgment of the trial court, granting American Hardware's motion for summary judgment and ordering dismissal of Fetch's complaint, is affirmed in all respects.

[¶ 31] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, WILLIAM A. NEUMANN, JJ, JOHN C. McCLINTOCK, Jr., D.J., concur.

[¶ 32] John C. McCLINTOCK, D.J., sitting in place of SANDSTROM, J., disqualified.