Mary Ann HUMMEL, individually and as personal representative of the estate of Duane M. Hummel, Plaintiff and Appellant,

v.

MID DAKOTA CLINIC, P.C., Defendant and Appellee.

Civ. No. 940218.

Supreme Court of North Dakota.

Jan. 25, 1995.

William P. Zuger (argued), Zuger Law Offices, Bismarck, for plaintiff and appellant.

William A. Strutz (argued), Fleck, Mather & Strutz, Bismarck, for defendant and appellee.

LEVINE, Justice.

Mary Ann Hummel, individually and as personal representative of the estate of Duane M. Hummel, appeals from a judgment dismissing her action against Mid Dakota Clinic, P.C., arising from Duane's December 1993 involuntary termination as business manager of the Clinic. We affirm.

The Clinic hired Duane to be its business manager in 1971, under an employment agreement that provided:

> "This employment contract shall be for a period of one year commencing June 1, 1971, and shall continue terminable thereafter by either party giving ninety (90) days written notice to the other party. The provisions of this contract shall be renegotiated at the end of each employment year."

In 1975, Duane and the Clinic agreed that lease payments for an automobile provided him under the 1971 employment contract would be deducted from his salary. Duane was in charge of preparing the Clinic's financial, payroll, and tax records, and supervising its audits. Duane also administered the automobile lease payments in his capacity as business manager.

Although the lease payments increased over the years, Duane's salary reduction remained the same as it had been in 1975. In December 1993, after the Clinic discovered the discrepancy during a year-end audit, Duane admitted the increased lease payments were not deducted from his salary and offered to repay the Clinic the approximately $40,000 that was due because of his "mistake." At this time, Duane's compensation, including benefits, approximated $200,000 per year.

On December 13, 1993, after meeting with Duane, the Clinic's board of directors submitted a resolution for approval by the physician staff that "Mr. Hummel will be terminated from employment at Mid Dakota Clinic, P.C." The physician staff met on December 15, 1993, and approved the board's recommendation to "terminate Mr. Hummel." According to the minutes of that meeting, the Clinic's counsel reported that the Clinic's "bond requires immediate suspension of any employee for whom there is proof that he/she may have committed a theft. For this reason Mr. Strutz explains Mr. Hummel will be suspended immediately, pending negotiation of his termination package." After that meeting, the board of directors met again and voted to replace Duane and name Michael Tomasko, age 49, formerly an assistant business manager, as acting administrator and chief executive officer.

On December 16, 1993, Duane was orally informed of the Clinic's action and told to vacate his office immediately. On December 20, 1993, Mary Ann Hummel, Duane's wife, who had been employed at the Clinic as a part-time nurse one day per week, resigned her position. On December 24, 1993, Duane, through counsel, wrote to the Clinic seeking reinstatement under the 1971 written employment agreement. On December 29, 1993, the Clinic wrote a letter to Duane stating:

> "This is to inform you that effective ninety (90) days from the date of your receipt of this letter your employment with Mid Dakota Clinic, P.C. is terminated. As your severance compensation, during that ninety (90) day period you will receive your full salary, including any 1993 year-end bonus or profit-sharing (pension) contribution to which you normally would be entitled. In addition, you will receive all of the regular benefits you would be entitled to as an employee of Mid Dakota Clinic. This is in keeping with your suspension, with full pay and benefits, which was effective December 16, 1993."

On January 24, 1994, Duane died of a heart attack in Cancun, Mexico, at age 60. The Clinic paid either Duane or his estate all

salary and benefits from December 16, 1993, through March 31, 1994.

Mary Ann sued the Clinic seeking damages on several theories: breach of Duane's employment contract; age discrimination against Duane; breach of implied covenant of good faith and fair dealing with Duane; intentional infliction of emotional distress against both Duane and Mary Ann; and constructive wrongful termination of Mary Ann. She also sought to have the Clinic's counsel, William A. Strutz, disqualified from representing the Clinic because he would be a necessary witness. The trial court denied the disqualification motion and granted summary judgment in favor of the Clinic dismissing all counts of the complaint. Mary Ann appealed.

I

Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the party opposing the motion, there are no genuine issues of material fact or conflicting inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Richmond v. Nodland,* 501 N.W.2d 759, 760–761 (N.D.), *cert. denied,* — U.S. ——, 114 S.Ct. 195, 126 L.Ed.2d 153 (1993). Under N.D.R.Civ.P. 56, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Union State Bank v. Woell,* 434 N.W.2d 712, 720 (N.D.1989). Once the movant has met this initial burden, the party opposing the motion may not rest on mere allegations or denials in the pleadings, but must present competent admissible evidence by affidavit or other comparable means to show the existence of a genuine issue of material fact. *Weiss, Wright v. Stedman,* 507 N.W.2d 901, 903 (N.D.1993).

In support of the summary judgment motion, the Clinic presented an affidavit from the president of its board of directors, stating that the Clinic's intention on December 16, 1993, was that Duane "be suspended pending formal notification of termination," and that Duane "was suspended and discharged because of unsatisfactory conduct and performance and because the Board of Directors

and owners of the Clinic had lost trust and confidence in Mr. Hummel." The affidavit also said that although Duane's responsibilities "have been absorbed by the assistant business manager," Duane "has not been replaced," and that "[t]here were no actions taken or statements made by Clinic management or officers intended to force the resignation of Mrs. Hummel." The Clinic met its initial burden of showing there were no issues of material fact in this case.

In response to the summary judgment motion, Mary Ann's counsel submitted two affidavits of his own accompanied with minutes of the meetings of the board of directors and the physician staff. There were attached to Mary Ann's complaint the employment agreement, the Clinic's 1975 administrative incentive plan, minutes of a January 1983 board of directors meeting, the December 24, 1993 letter to the Clinic from Mary Ann's counsel, the Clinic's December 29, 1993 notice of termination to Duane, and a statement from the Clinic to Duane listing what he owed the Clinic.

In one affidavit, counsel relates several things Duane allegedly told him about the events at the Clinic during December 1993. Counsel also states he had been contacted by an unnamed Clinic physician who told him certain other physicians would "testify falsely" about conversations they had had with Duane, and that Tomasko had discussed Duane's termination with Clinic staff. In the second affidavit, counsel attests to Duane's "extreme emotional distress" following the termination, that other persons would be prepared to testify about it at trial, and that Mary Ann was "out of town" and "not available to prepare an affidavit, but will be prepared to testify at any future trial."

The trial court concluded that counsel for Mary Ann had failed to comply with N.D.R.Civ.P. 56(e), that Duane's purported statements were inadmissible hearsay to which counsel had not established an exception, and that the remaining documentary evidence was insufficient to raise a genuine issue of material fact on any of Mary Ann's claims. We agree with the trial court.

An affidavit in opposition to a motion for summary judgment

"must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein.... [T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, must be entered against the adverse party." N.D.R.Civ.P. 56(e).

■ An affidavit of counsel in resistance to a motion for summary judgment made on information and belief does not comply with Rule 56(e). *Luithle v. Taverna*, 214 N.W.2d 117, 124 (N.D.1973). Rather, "an attorney's affidavit is admissible only to prove facts that are within his personal knowledge and as to which he is competent to testify; an affidavit stating what the attorney believes or intends to prove at trial will be disregarded." 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2738, at pp. 495–496 (1983) (footnotes omitted). An attorney's hearsay affidavit is not a substitute for the personal knowledge of a party. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988). Because counsel's affidavits are not based on first-hand, personal knowledge of the relevant events, but instead attempt to present hearsay information about those events to the court, the trial court properly refused to give them any weight in determining whether summary judgment was appropriate. *See Timmerman Leasing, Inc. v. Christianson*, 525 N.W.2d 659, 662 (N.D. 1994); *Viall v. Triangle Electric, Inc.*, 211 N.W.2d 185, 188 (N.D.1973); *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983).

■ Mary Ann asserts that the trial court should have allowed discovery to continue under N.D.R.Civ.P. 56(f), which allows the court to refuse an application for summary judgment and allow further time for discovery "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition...." Mary Ann claims her counsel's

affidavits were not offered as substantive evidence, but were intended to invoke Rule 56(f). According to Mary Ann, this is bolstered by the following comments in her trial court brief:

"Duane Hummel has died, and cannot personally testify, but the affidavit demonstrates a basis to reasonably expect discovery to substantiate the plaintiff's position. His widow has the right to pursue discovery in the case, to verify from other admissible sources, what her husband was told on December 16, 1993."

We do not view these comments in the brief, considered along with the affidavits, as sufficient to invoke Rule 56(f). Rule 56(f) is not mentioned in either the brief or the affidavits, and nowhere are reasons stated why Mary Ann cannot present by affidavit any facts essential to justify her opposition to the motion. The trial court did not view these vague, isolated references to discovery as a Rule 56(f) request, and neither do we.

■ The possibility that discovery will yield evidence favorable to a party opposing summary judgment is not a ground to deny summary judgment where the party opposing the motion has failed to specifically invoke Rule 56(f) procedures. *Larson v. Baer*, 418 N.W.2d 282, 288–289 (N.D.1988); *Davis v. Satrom*, 383 N.W.2d 831, 833 (N.D.1986). Because counsel did not comply with Rule 56(f), the alleged incomplete state of Mary Ann's discovery provides no basis to reverse the summary judgment. *Timmerman Leasing, Inc., supra*. We therefore limit our review to the documentary evidence submitted in opposition to the Clinic's motion.

## II

■ Mary Ann asserts that, whatever the Clinic chooses to call its actions on December 16, 1993, the Clinic's order that Duane vacate the premises on that date amounted to a "termination" under, and breach of, the employment contract because he was not given 90 days prior written notice. The Clinic asserts that the contract authorized it to orally suspend or discharge Duane as long as he was later provided 90 days written notice and payment of all compensation due during

that time period. The Clinic contends that, in any event, Duane incurred no damages in this case because he received all compensation for three months and two weeks after being notified, which was longer than the contract required.

The trial court concluded:

"If there was a technical breach it was cured in a timely fashion without damage to Hummel. His salary continued to be paid from 12–16 to 12–29. Written notice was given 12–29 and the full salary paid as the contract required. . Curing the breach in this manner results in no actionable breach of contract. Plaintiff has substantially performed its contract and this court may ignore trifling departures in the performance of a contract. See *Hom vs. State*, 459 N.W.2d 823 [ (N.D.1990) ]."

■ We agree with the trial court's result, but not with all of its reasoning. Nevertheless, we will not set aside a correct result merely because the trial court assigned an incorrect reason if the result is the same under the correct law and reasoning. *Thompson v. Danner*, 507 N.W.2d 550, 557 (N.D.1993).

■ Assuming there was a breach of the employment agreement, the undisputed evidence shows Duane suffered no damages from the breach. A party who proves a breach of a contractual duty, but who fails to prove damages resulting from the breach, is entitled to nominal damages only. 11 Williston on Contracts § 1339A (3d ed. 1968); 5 Corbin on Contracts § 1001 (1964); Restatement (Second) of Contracts § 346 (1981). Nominal damages are limited to one dollar. *Olson v. Fraase*, 421 N.W.2d 820, 826 (N.D. 1988). However, because of the trivial amount, the failure to award nominal damages does not warrant reversal of a judgment unless a significant right or a question of costs is involved. Restatement (Second) of Contracts § 346, Comment b (1981); 5 Am. Jur.2d *Appeal and Error* § 790 (1962). *See McGregor v. Harm*, 19 N.D. 599, 125 N.W. 885, 887 (1910) (where no question of costs involved, court would not reverse judgment even if it clearly appeared plaintiff was owed 39 cents). *See also Rauch v. Circle Theatre*,

176 Ind.App. 130, 374 N.E.2d 546, 553 (1978); *Nisbet v. KVP–Sutherland Paper Company*, 373 Mich. 159, 128 N.W.2d 549, 550 (1964); *Marsico v. Adams*, 47 N.C.App. 196, 266 S.E.2d 696, 698 (1980); *Earl Millikin, Inc. v. Allen*, 21 Wis.2d 497, 124 N.W.2d 651, 655 (1963); *Reese v. Dow Chemical Co.*, 728 P.2d 1118, 1121 (Wyo.1986). We agree with the trial court that the breach, if any, was "technical" in nature and did not involve a significant right. Costs would be relevant only if an award of nominal damages would have "entitled" the plaintiff to costs. *See Staples v. Hoefke*, 189 Cal.App.3d 1397, 235 Cal.Rptr. 165, 171 (1987). Under the circumstances, Mary Ann would not be "entitled" to costs because they are discretionary with the trial court. *See* N.D.C.C. § 28–26–10. In this case, the trial court dismissed the action "without costs to any party."

Assuming the Clinic technically breached the employment contract, we decline to reverse the summary judgment for failure of the trial court to award nominal damages of one dollar.

### III

■ Mary Ann asserts that the trial court erred in granting summary judgment dismissing the age discrimination claim under N.D.C.C. § 14–02.4–03 of the North Dakota Human Rights Act. The trial court ruled that the "minutes are not sufficient for a reasonable person to draw an inference of age discrimination so as to make out a prima facie case of discrimination." We agree.

In *Schweigert v. Provident Life Ins. Co.*, 503 N.W.2d 225, 227 n. 2 (N.D.1993), we said that to establish a prima facie case of discriminatory discharge under the Act, one of the four factors a plaintiff must show is that the plaintiff was satisfactorily performing the duties of his position. The minutes of the board of directors meeting unequivocally show Duane was not satisfactorily performing those duties. Duane admitted overpaying himself more than $40,000 by failing to deduct the full lease payments from his salary and offered to repay the Clinic. This is not an insignificant error. Although he told the board of directors the "large overpay-

ment" was "accidental, not intentional," Duane acknowledged he "can't blame anyone else; it is my problem and my responsibility." The board of directors also discussed "that many physicians had expressed concern about the lack of work being done by Mr. Hummel," and the minutes of the physician staff meeting show other concerns were expressed about his job performance.

Mary Ann's major argument about the Clinic's "true motives" relies on the allegations in her complaint and in her counsel's affidavits, which we have already ruled are not competent evidence in opposition to the summary judgment motion. We conclude that, on the record properly before us, Mary Ann has failed to raise a reasonable inference that Duane was satisfactorily performing his employment duties. *See, e.g., First Interstate Bank v. Rebarchek*, 511 N.W.2d 235, 242 (N.D.1994); *Hillesland v. Federal Land Bank Ass'n*, 407 N.W.2d 206, 215 (N.D.1987).

## IV

Mary Ann asserts that the trial court erred in dismissing the claim for breach of an implied covenant of good faith and fair dealing. The trial court ruled that North Dakota has not recognized this action and dismissed the count for failure to state a claim. *See Hillesland.* We need not decide the issue because, even if there were an implied covenant, Mary Ann has failed to raise a genuine issue of material fact that the Clinic did not act in good faith.

The minutes reflect only that, after discussing Duane's substantial overpayment of his salary, the board members "one by one expressed individually and unanimously that the trust and credibility Mr. Hummel once had has vanished completely and entirely." We find nothing in the minutes to suggest that the Clinic acted in bad faith in terminating Duane's employment. Rather, the minutes indicate the Clinic acted solely on a legitimate and documented concern for its financial affairs. Summary judgment dismissing this claim was properly granted.

We also conclude that the trial court properly dismissed the claim of intentional infliction of emotional distress with regard to Duane. The elements of this tort require extreme and outrageous conduct that is intentional and reckless and that causes severe emotional distress. *Muchow v. Lindblad*, 435 N.W.2d 918, 923–924 (N.D.1989). To satisfy the threshold element of extreme and outrageous conduct, that conduct must exceed " 'all possible bounds of decency.' " *Id.* at 924 (quoting Restatement (Second) of Torts § 46, Comment d (1965)). Just as the minutes do not permit an inference of bad faith on the part of the Clinic, they also do not raise a genuine issue of material fact that the Clinic engaged in extreme and outrageous conduct.

## V

Mary Ann asserts that the trial court erred in dismissing her individual claim of intentional infliction of emotional distress. However, she argues "the manner in which the Clinic inflicted emotional distress upon Mary Ann Hummel was the same as her husband Duane." Because we have already concluded there was no evidence to permit a reasonable inference that the Clinic engaged in extreme and outrageous conduct with respect to Duane, Mary Ann's individual claim must also fail. We conclude that the trial court did not err in granting summary judgment dismissal of Mary Ann's claim of intentional infliction of emotional distress.

Mary Ann asserts that the trial court erred in dismissing her claim for constructive termination of her employment by the Clinic. A constructive discharge occurs when an employer deliberately makes or allows an employee's working conditions to become so intolerable that the employee has no other choice but to quit. *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73, 83 (N.D.1991). There is nothing in the record properly before us to support Mary Ann's claim that the Clinic deliberately sought to make her working conditions so intolerable that she would be forced to resign. The trial court correctly dismissed this claim because Mary Ann failed to raise a genuine issue of material fact to permit an inference of constructive discharge by the Clinic.

Because of our disposition of this case, it is unnecessary to consider whether the trial court erred in refusing to grant Mary Ann's motion to disqualify the Clinic's counsel.

The judgment is affirmed.

LEVINE, NEUMANN and SANDSTROM, JJ., and DONALD L. JORGENSEN, District Judge.

VANDE WALLE, C.J., concurs in the result.

DONALD L. JORGENSEN, District Judge, sitting in place of MESCHKE, J., disqualified.