2002 ND 55

BTA OIL PRODUCERS, Cenex Harvest States Cooperatives, Conoco, Inc., Equitable Resources Energy Company, Exxon Mobil Corporation, Midgard Energy Company, (formerly known as Maxus Exploration Company), Sinclair Oil Corporation, Kerr–McGee Oil & Gas Onshore, L.P., TBI Exploration, Inc., (formerly known as Presidio Exploration, Inc.), Tipperary Oil & Gas Corporation, and Tom Brown, Inc., Plaintiffs and Appellants,

v.

MDU RESOURCES GROUP, INC., (formerly known as Montana–Dakota Utilities Company), Williston Basin Interstate Pipeline Company, Inc., Koch Industries, Inc., and Koch Hydrocarbons Company, Defendants and Appellees.

No. 20010122.

Supreme Court of North Dakota.

April 16, 2002.

Rehearing Denied May 17, 2002.

James B. Wilcox, Jr. (argued), Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Washington, DC, and Albert J. Hardy (appeared), Hardy, Maus & Nordsven, P.C., Dickinson, ND, for plaintiffs and appellants.

Daniel S. Kuntz (argued) and James S. Hill (on brief), Zuger Kirmis & Smith, Bismarck, for defendants and appellees MDU Resources Group, Inc., and Williston Basin Interstate Pipeline Company, Inc.

James M. Armstrong (argued), Foulston & Siefkin L.L.P., Wichita, KS; John W.

Morrison (appeared), Fleck, Mather & Strutz, Bismarck, ND, James D. Oliver (on brief), Foulston & Siefkin L.L.P., Topeka, KS, Michael A. Ceramella (on brief), Koch Industries, Inc., Wichita, KS, for defendants and appellees Koch Industries, Inc. and Koch Hydrocarbons Company.

SANDSTROM, Justice.

[¶ 1] BTA Oil Producers, Cenex Harvest States Cooperatives, Conoco, Inc., Equitable Resources Energy Company, Exxon Mobil Corporation, Midgard Energy Company, Sinclair Oil Corporation, Kerr McGee Oil & Gas Onshore, L.P., TBI Exploration, Inc., Tipperary Oil & Gas Corporation, and Tom Brown, Inc. (collectively "BTA") appeal from a judgment that dismissed most of their claims against MDU Resources Group, Inc., and Williston Basin Interstate Pipeline Company, Inc. (collectively "MDU"), and Koch Industries, Inc., and Koch Hydrocarbons Company (collectively "Koch"), and that awarded Exxon $404,122.34 from Koch for breach of contract for miscalculating treating fees. We affirm in part, reverse in part, and remand, concluding: (1) MDU was not barred by judicial estoppel from disputing BTA's claims; (2) the district court did not err in granting summary judgment dismissing BTA's unjust enrichment and implied trust claims against MDU; (3) the district court did not err in dismissing BTA's breach of contract and unjust enrichment claims against Koch; (4) BTA failed to present competent admissible evidence establishing a genuine issue of material fact on its claim against Koch for an accounting for liquid hydrocarbons; (5) the district court applied the appropriate statute of limitations to Exxon's treating fees claim; and (6) the district court erred in determining Exxon first asserted its treating fees claim when it moved to amend the complaint on September 3, 1997.

I

[¶ 2] During the time relevant to this case, Koch bought and processed natural gas at its processing plant in McKenzie County. BTA and the other appellants produced natural gas and sold it to Koch. The contracts between Koch and BTA were percentage-of-proceeds contracts, which did not establish a set price for the gas purchased. Under these contracts, Koch took title to the raw natural gas, processed it, and paid BTA a percentage of the price Koch received when it resold the gas. Although the contracts between Koch and the various producers differed slightly, on average the producers received seventy-five percent of the resale price of the gas when sold by Koch.

[¶ 3] MDU operates a natural gas distribution system. In 1979, when natural gas was in short supply, MDU and Koch entered into a ten-year contract, with MDU agreeing to purchase certain minimum volumes of gas at the highest price permitted by the Natural Gas Policy Act of 1978. MDU originally bought all of the gas available from Koch. In 1983 a surplus of gas developed, and natural gas prices fell. MDU reduced the volume of its gas purchases, taking less than Koch had available.

[¶ 4] MDU continued paying the maximum price allowed under the Natural Gas Policy Act through 1984. On January 1, 1985, prices for natural gas were deregulated and a dispute arose over the price of gas under the contract. MDU contended the lower, unregulated market price should apply. Koch argued the last regulated price, which was higher than market price, should be applied.

[¶ 5] In 1986, Koch acquired the rights of another seller, Phillips Petroleum Company, which had a similar gas purchase contract with MDU running through 2000.

Similar disputes over gas pricing arose under that contract.

[¶ 6] In January 1987, Koch sued MDU in federal district court for breach of contract. On May 6, 1987, MDU advised Koch it would no longer take gas under the contracts. The federal district court held MDU had breached the contract, but Koch was only entitled to recover damages based upon its twenty-five percent share of the proceeds of its sales to MDU. Koch was not allowed to recover damages based upon the seventy-five percent of the sale proceeds that went to BTA and other producers. The United States Court of Appeals for the Eighth Circuit affirmed the percentage-of-proceeds reduction in damages, and remanded to the district court on other issues. *See Koch Hydrocarbon Co. v. MDU Resources Group, Inc.*, 988 F.2d 1529 (8th Cir.1993). Koch and MDU subsequently settled all of their claims.

[¶ 7] Shortly thereafter, two of Koch's producers sued MDU in state court. These producers claimed they were third-party beneficiaries of the MDU–Koch contracts, MDU had been unjustly enriched by being allowed to retain profits after defaulting on its contracts, and MDU held the remaining seventy-five percent of the alleged "damages" in an implied trust. The district court concluded the producers were not third-party beneficiaries under the MDU–Koch contracts, MDU was not unjustly enriched, and there was no evidence establishing an implied trust. We affirmed the district court judgment. *Apache Corp. v. MDU Resources Group, Inc.*, 1999 ND 247, 603 N.W.2d 891.

[¶ 8] In March 1997, while the *Apache* case was still pending in district court, BTA brought this action against MDU and Koch. BTA alleged unjust enrichment and implied trust claims against MDU, and alleged breach of contract, unjust enrichment, fraud, and civil conspiracy claims

against Koch. In July 1997, Exxon was permitted to intervene in this action as a plaintiff. Exxon pleaded an additional breach of contract claim, alleging Koch had underpaid Exxon for its gas by miscalculating "treating fees" under the contract.

[¶ 9] MDU and Koch moved for partial summary judgment. Relying upon *Apache*, the district court dismissed all claims except Exxon's treating fees claim against Koch. After further discovery, Exxon and Koch both moved for summary judgment on the treating fees claim. The district court concluded Koch had breached its contract with Exxon by miscalculating treating fees and found damages of $404,122.34. Judgment was entered dismissing all claims except the treating fees claim and awarding damages to Exxon on its treating fees claim. BTA appealed.

[¶ 10] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 11] Summary judgment is a procedural device for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law and if no dispute exists as to either the material facts or the reasonable inferences to be drawn from undisputed facts or if resolving the factual disputes will not alter the result. *E.g., Anderson v. Meyer Broadcasting Co.*, 2001 ND 125, ¶ 14, 630 N.W.2d 46; *Van Valkenburg v. Paracelsus Healthcare Corp.*, 2000 ND 38, ¶ 17, 606 N.W.2d 908. On appeal, we review the evidence in the light most favorable to the party opposing the motion for summary judgment, and we give that party the benefit of all favorable inferences that reasonably can be drawn from the

evidence. *Jaskoviak v. Gruver*, 2002 ND 1, ¶ 11, 638 N.W.2d 1.

[¶ 12] We outlined the duty of a party opposing a summary judgment motion in *Anderson*, 2001 ND 125, ¶ 14, 630 N.W.2d 46 (quoting *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D.1991) (internal citations omitted)):

> "Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact."

> "In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief."

### III

[¶ 13] BTA argues the defenses raised by MDU in this case are inconsistent with the position MDU took in *Koch Hydrocarbon Co. v. MDU Resources Group, Inc.*, 988 F.2d 1529 (8th Cir.1993), and MDU is therefore barred from challenging the un-just enrichment and implied trust claims under the doctrine of judicial estoppel.

[¶ 14] We have never adopted the doctrine of judicial estoppel in this state. Judicial estoppel prohibits a party from assuming inconsistent or contradictory positions during the course of litigation. *See State v. Profit*, 591 N.W.2d 451, 462 (Minn.1999); 28 Am.Jur.2d *Estoppel and Waiver* § 74 (2000); 31 C.J.S. *Estoppel and Waiver* § 139(a) (1996). The underlying rationale for the doctrine is summarized in 28 Am.Jur.2d *Estoppel and Waiver* § 74 (footnotes omitted):

> The fundamental concept of judicial estoppel is that a party in a judicial proceeding is barred from denying or contradicting sworn statements made therein. Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent, conflicts with, or is contrary to one that she has previously asserted in the same or in a previous proceeding; it is designed to prevent litigants and their counsel from playing fast and loose with the courts, and to protect the integrity of the judicial process. Judicial estoppel doctrine is equitable and is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories. The purpose of the doctrine of judicial estoppel is to reduce fraud in the legal process by forcing a modicum of consistency on the repeating litigant.

The doctrine applies only where a party's subsequent position is totally inconsistent with its original position, and does not apply where distinct or different issues or facts are involved. *Profit*, 591 N.W.2d at 462; 28 Am.Jur.2d *Estoppel and Waiver* § 74; 31 C.J.S. *Estoppel and Waiver* § 139(a).

[¶ 15] Assuming, without deciding, that the doctrine of judicial estoppel

applies in this state, we conclude the doctrine would not bar MDU's arguments because the position taken by MDU in this case is not inconsistent with the position it took in *Koch*. In that case, Koch sued MDU for breach of contract, seeking to recover the difference between the amount Koch would have received if MDU had purchased the gas at the higher contract rate and the amount Koch actually received selling the gas on the open market. Koch sought to recover 100 percent of the difference, including the 75 percent it would have passed on to the producers under the percentage-of-proceeds contracts. MDU argued Koch could recover only its own losses, represented by the 25 percent Koch would retain upon sale of the gas. The United States Court of Appeals for the Eighth Circuit agreed with MDU:

> In this appeal, Koch argues that the damage award should not have been reduced, since Koch may yet be obligated to reimburse the producers for their seventy-five percent share. We reject this argument. The court did not enforce the contract by ordering specific performance but merely awarded Koch its actual damages. MDU was not ordered to take the gas and pay for it, in which case Koch would be liable to the producers for a percentage of the proceeds. The other producers did not intervene in Koch's suit, and Koch should be allowed to collect only the damages it sustained. If the gas was not sold, Koch did not owe the producers their cut; if Koch did sell to other customers the gas that MDU had contracted to buy, Koch presumably paid the producers the appropriate percentage from those proceeds, and the producers would have no further recourse against Koch.

We believe the court correctly found that Koch could not prove that it sustained three-quarters of the damages claimed, and that Koch did not prove

that it would be liable in the future to pay producers for gas not sold merely because Koch collects on a judgment for its damages resulting from MDU's breach. The percentage-of-proceeds reduction in damages is affirmed.

*Koch*, 988 F.2d at 1547.

[¶ 16] BTA contends, because MDU argued in *Koch* that the producers were the real parties in interest as to 75 percent of the damages and bore the burden of that loss, MDU should now be estopped from arguing it is not liable to the producers for those losses. BTA cited the following quotations from MDU's pleadings and briefs in *Koch* as examples of positions inconsistent with MDU's defenses in this case:

> "It is axiomatic that the real party in interest in an action for damages is the party who has, or can at least offer evidence that he has, actually been damaged by the underlying events.... [V]irtually all of the effects of reduced gas cost and things like that were passed on to the producers."
>
> . . . .
>
> "[M]uch of the burden of decreased gas prices is passed up the line to producers who sell to Koch."
>
> . . . .
>
> "As a result of all these various arrangements, when MDU reduced its purchases from Koch, the producers bore the burden."
>
> . . . .
>
> "As a result, when MDU reduced its purchases from Koch, the producers sustained a 75% share of the deduction from the price differential, Koch took at most a 25% share of the loss."

[¶ 17] The issue in *Koch* was whether Koch could recover 100 percent of the difference between the contract price and the price it actually received when it sold

the gas elsewhere. MDU argued Koch was not the real party in interest as to 75 percent of the difference and the producers bore that loss. MDU did not, however, concede or otherwise imply it was liable to the producers for that loss. The statements quoted by BTA are not admissions of liability to the producers but merely arguments, within the context of that litigation, that Koch had not suffered those losses. Furthermore, the extent of MDU's liability to Koch for breach of their contract and MDU's potential liability to the producers for unjust enrichment or implied trust are entirely different and distinct issues. BTA has not shown any position taken by MDU in *Koch* was inconsistent with its arguments in this case.

[¶ 18] We conclude the doctrine of judicial estoppel, if recognized in this state, would not bar MDU from challenging the unjust enrichment and implied trust claims in this case.

### IV

■ [¶ 19] BTA contends the trial court erred in granting summary judgment dismissing its unjust enrichment and implied trust claims against MDU.

[¶ 20] We addressed identical issues raised against MDU by other producers in *Apache Corp. v. MDU Resources Group, Inc.*, 1999 ND 247, 603 N.W.2d 891. In that case, Apache Corporation and Snyder Oil Corporation, producers who were selling gas to Koch under percentage-of-proceeds contracts, sued MDU after it breached its contracts with Koch. The producers argued they were third-party beneficiaries under the MDU–Koch contracts, MDU was unjustly enriched by its repudiation of its contracts with Koch, and MDU held damages in an implied trust.

The trial court dismissed the producers' claims, and they appealed. BTA and the other producers in this case filed an amicus curiae brief in support of Apache and Snyder. *See Apache*, at ¶ 8 n. 1.

[¶ 21] We affirmed the dismissal of the producers' claims, concluding the producers were not third-party beneficiaries under the MDU–Koch contracts, MDU had not been unjustly enriched, and there was no evidence to establish an implied or constructive trust.[1] In rejecting the unjust enrichment claim, we explained:

Apache benefited when MDU performed MDU's contract with Koch. Although MDU saved money by breaching its contract with Koch, and Apache received less money from Koch when MDU breached its contract with Koch, MDU contracted with Koch and not with Apache. The money MDU saved by breaching its contract with Koch was not a "benefit at the direct expense of" Apache. [*Midland Diesel Serv. & Engine Co. v.] Sivertson*, 307 N.W.2d [555,] 557 [ (N.D.1981) ]. Apache's reduced income resulted from its use of a percentage of proceeds as a pricing factor in its agreements with Koch, which contemplated increases or decreases in gas prices. Where the impoverishment results from a valid contractual arrangement made by a party, the result is not contrary to equity. *Albrecht [v. Walter]*, 1997 ND 238, ¶ 23, 572 N.W.2d 809. Thus, we are unpersuaded the essential element of recovering under a theory of unjust enrichment—"receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value"—is present here. *Zuger [v. North Dakota Ins.*

1. On this appeal, BTA concedes it is not a third-party beneficiary under the MDU–Koch contracts. BTA has not provided any argument or citations to support an implied trust in this case.

*Guar. Ass'n],* 494 N.W.2d [135], 138 [ (N.D.1992) ].

*Apache,* 1999 ND 247, ¶ 15, 603 N.W.2d 891.

[¶ 22] BTA does not argue there are factual distinctions between this case and *Apache.* Nor has BTA drawn our attention to different provisions in the percentage-of-proceeds contracts involved here. In essence, the facts of the two cases are identical and arise from the same series of transactions.

[¶ 23] BTA does not attempt to distinguish *Apache,* but invites us to overrule our decision in that case. We decline to do so. Unjust enrichment requires a showing of an enrichment, an impoverishment, and a connection between the two. *Apache,* 1999 ND 247, ¶ 13, 603 N.W.2d 891; *Albrecht v. Walter,* 1997 ND 238, ¶ 23, 572 N.W.2d 809. When the impoverishment results from a valid contractual arrangement made by a party, the result is not contrary to equity and there has been no unjust enrichment. *Apache,* at ¶ 15; *Albrecht,* at ¶ 23. BTA has not cited a single decision allowing a third-party supplier to recover for unjust enrichment under facts similar to this case. Any enrichment of MDU and impoverishment of BTA in this case was the result of BTA's voluntary contractual arrangement with Koch.

[¶ 24] We decline to overrule *Apache* and conclude the district court did not err in dismissing the claims against MDU.

## V

[¶ 25] BTA argues the trial court erred in granting summary judgment dismissing its breach of contract and unjust enrichment claims against Koch.

## A

[¶ 26] BTA contends Koch breached its contracts with the producers by failing to apprise them of "major developments" in the *Koch v. MDU* litigation. Shortly after suing MDU in federal court in January 1987, Koch sent a letter to the producers outlining the history of the dispute over the contract price after deregulation and indicating Koch had filed suit against MDU. The letter indicated Koch would apprise the producers of any "major developments." BTA argues Koch had thereby contractually agreed to notify the producers of any "major developments" in the federal litigation, and Koch breached the contract when it failed to notify them the court had held Koch could only recover 25 percent of the damages sought.

[¶ 27] Assuming, without deciding, that Koch breached an agreement when it failed to apprise the producers of the alleged "major development," we conclude the trial court did not err in granting summary judgment, because BTA has not shown it suffered damages caused by the alleged breach. *See Hummel v. Mid Dakota Clinic, P.C.,* 526 N.W.2d 704, 709 (N.D.1995).[2] In support of its assertion that Koch should be liable for "millions of dollars" in damages for failing to apprise the producers of the court's holding in the federal litigation, BTA argues it could have intervened in that case or taken other affirmative steps to protect its interests against MDU if it had been apprised of this "major development." BTA's entire argument is premised upon its belief it could have recovered damages from MDU had it learned earlier of the federal court's ruling. In *Apache* and this case, however,

---

**2.** BTA did not argue it was entitled to nominal damages. *See Hummel,* 526 N.W.2d at 709.

we have held the producers had no valid claim for damages against MDU. BTA lost no rights against MDU by Koch's failure to notify it of the federal court's ruling, because BTA has been afforded the full opportunity to litigate its claims against MDU and has failed to demonstrate how a different result would have been reached had it acted earlier to protect its interests against MDU.

B

[¶ 28] BTA argues Koch breached its contracts with the producers when it failed to share the settlement proceeds it received from MDU in the *Koch v. MDU* litigation. BTA claims the producers are entitled to 75 percent of the settlement proceeds.

[¶ 29] In its brief on appeal, BTA argues "the settlement was expressly an agreement to settle the *Koch v. MDU* case," and "Koch had sued for the price differential on 100% of contract volumes." However, at the time Koch and MDU settled, the federal district court and the United States Court of Appeals for the Eighth Circuit had held Koch could recover only its own 25 per cent loss, and "Koch did not prove that it would be liable in the future to pay producers for gas not sold merely because Koch collects on a judgment for its damages resulting from MDU's breach." *Koch,* 988 F.2d at 1547. The case was remanded to the district court for reconsideration of damages and other issues between MDU and Koch. *See id.* at 1548.

[¶ 30] The settlement agreement was reached after, and must be read in context with, the opinion of the United States Court of Appeals for the Eighth Circuit in *Koch.* It is clear the 75 percent of "damages" represented by the producers' percentage of proceeds had been effectively removed from the case. When MDU and Koch settled their claims, they could settle only Koch's own 25 percent of the losses. *See Koch,* 988 F.2d at 1547 ("The other producers did not intervene in Koch's suit, and Koch should be allowed to collect only the damages it sustained."). Any liability of MDU for the remaining 75 percent was left for subsequent litigation between the producers and MDU. The producers' alleged damages were not "settled" by MDU and Koch; the producers claims against MDU have been "settled" by our opinions in *Apache* and this case.

[¶ 31] We conclude the producers were not entitled to share in the settlement proceeds and Koch's failure to share the proceeds was not a breach of contract.

C

[¶ 32] BTA argues Koch breached a duty of good faith owed to the producers when it entered into the settlement agreement with MDU. BTA contends there was an implied covenant of good faith and fair dealing included in the gas purchase contracts between the producers and Koch and, in addition, some of the contracts expressly required Koch to make good faith efforts to sell the gas to MDU. BTA has drawn our attention to the following language in a purchase contract between Koch and Sinclair Oil Corporation: "[Koch] shall exert diligent and good faith efforts to sell all of Producer's Plant Output of Residue Gas to [MDU]." BTA argues Koch violated its duty of good faith when it agreed to a buyout and termination of its contracts with MDU in settling the *Koch v. MDU* litigation.

[¶ 33] BTA's argument wholly ignores the realities of the situation leading to the settlement. MDU had repudiated its contracts with Koch and stopped accepting gas in 1987. Koch sued MDU, and through six and one-half years of litigation, sought at its own expense to recover full

damages on behalf of the producers. The producers did not seek to intervene or otherwise assist in financing the lengthy litigation against MDU. Koch pursued the claims, including those that would have benefitted the producers, to the United States Court of Appeals. Only after that court unequivocally held Koch could not recover damages that would benefit the producers did Koch settle its claims against MDU.

[¶ 34] Koch could not require MDU to resume accepting gas at the pre-deregulation price, and Koch had engaged in costly litigation seeking to secure payment for the producers. BTA has not presented any evidence establishing Koch's settlement with MDU breached any duty of good faith owed to the producers.

[¶ 35] Furthermore, the Koch–Sinclair contract provision relied upon by BTA, read in its entirety, clearly demonstrates the parties anticipated the gas might not be sold to MDU and made explicit provisions for that eventuality:

> [Koch] shall exert diligent and good faith efforts to sell all of Producer's Plant Output of Residue Gas to [MDU] (as [Koch] does with respect to all producers on its system); and if not purchased by [MDU], and Producer does not instruct otherwise, [Koch] shall exert diligent and good faith efforts (as [Koch] does in behalf of all producers on its system, unless they instruct otherwise) to sell the portion remaining of Producer's Plant Output of Residue Gas to other purchasers on the terms and for the Net Sales Proceeds which [Koch], in its sole judgment, considers best. . . .

BTA has not drawn our attention to evidence in this record demonstrating Koch failed to exert "diligent and good faith efforts" to sell the producers' gas to MDU. When MDU repudiated the contract and refused to accept gas from Koch, Koch sold the gas to other purchasers and paid the producers 75 percent of the proceeds. Under these circumstances, Koch did not breach its contracts with the producers.

## D

[¶ 36] BTA contends the district court erred in granting summary judgment dismissing its unjust enrichment claim against Koch.

[¶ 37] The determination of unjust enrichment is a conclusion of law and is fully reviewable on appeal. *Schroeder v. Buchholz*, 2001 ND 36, ¶ 14, 622 N.W.2d 202; *Apache*, 1999 ND 247, ¶ 13, 603 N.W.2d 891. Unjust enrichment is an equitable doctrine based upon quasi- or constructive contracts implied by law to prevent a party from being unjustly enriched at another's expense. *Schroeder*, at ¶ 14; *In re Estate of Hill*, 492 N.W.2d 288, 295 (N.D.1992). It is well-settled, unjust enrichment in this context applies only in the absence of a contract between the parties, and there can be no implied-in-law contract when there is an express contract between the parties relative to the same subject matter. *See, e.g., Dalan v. Paracelsus Healthcare Corp.*, 640 N.W.2d 726, 2002 ND 46, ¶ 24; *Schroeder*, at ¶¶ 14, 18; *Apache*, at ¶ 13; *Estate of Hill*, 492 N.W.2d at 294–95 n. 1; *First Nat'l Bank of Belfield v. Burich*, 367 N.W.2d 148, 154 (N.D.1985); *Cavalier County Mem'l Hosp. Ass'n v. Kartes*, 343 N.W.2d 781, 785 (N.D. 1984).

[¶ 38] We agree with the reasoning of the United States Court of Appeals for the Eighth Circuit in *JN Exploration & Prod. v. Western Gas Res., Inc.*, 153 F.3d 906, 910 (8th Cir.1998) (footnotes omitted), in which the court summarized application of the doctrine under North Dakota law:

> Because unjust enrichment is synonymous with quasi contract, and because in North Dakota quasi contractual princi-

ples find no application in the face of an express contract, it follows necessarily that in the face of an express contract, an action for unjust enrichment cannot lie. The Supreme Court of North Dakota has repeatedly recognized this, stating, "the doctrine [of unjust enrichment] serves as a basis for requiring restitution of benefits conferred *in the absence of* an express or implied in fact contract." *Sykeston Township [v. Wells County* ], 356 N.W.2d [136,] 139 [ (N.D. 1984) ] (emphasis added); *see also D.C. Trautman Co. [v. Fargo Excavating Co.*], 380 N.W.2d [644,] 645 [ (N.D. 1986) ] (unjust enrichment applies in the absence of an express or implied in fact contract); [*First Nat'l Bank of Belfield v.] Burich,* 367 N.W.2d [148,] 154 [ (N.D. 1985) ] (same). In *Burich,* the Supreme Court of North Dakota highlighted the incompatibility of unjust enrichment and an express contract when it concluded, "[i]n this instance, an express contract existed between Burich and the Bank and therefore it was error to rely on the theory of unjust enrichment." 367 N.W.2d at 154. In short, because unjust enrichment is grounded in quasi contract, where, as here, the parties have voluntarily entered into an *express written* contract which defines the rights of each, unjust enrichment is a *non sequitur.*

[¶ 39] BTA argues the decision in *JN Exploration* conflicts with earlier decisions of this Court, citing *Trauger v. Helm Bros., Inc.,* 279 N.W.2d 406 (N.D.1979), *Fiebiger v. Fischer,* 276 N.W.2d 241 (N.D. 1979), and *Cargill, Inc. v. Kavanaugh,* 228 N.W.2d 133 (N.D.1975). In those cases, this Court stated: "Where an action sounds in contract, invocation of equity powers of court is inappropriate in absence of showing of unjust enrichment, fundamental unfairness, or miscarriage of law requiring intervention of equitable principles." *Trauger,* at 414; *Fiebiger,* at 246; *see also Cargill,* at 140. None of these cases involved an attempt to impose an implied-in-law, quasi-contract theory of unjust enrichment when there was an express agreement between the parties. Rather, those cases were merely recognizing that when an extraordinary equitable remedy—such as restitution or reformation—is sought in a contract case, extraordinary circumstances must be shown. These cases do not conflict with the holding in later cases of this Court that unjust enrichment based upon quasi-contract is unavailable if there is an express contract between the parties.

[¶ 40] BTA also quotes Dan B. Dobbs, *Law of Remedies* § 12.7(1) (2d ed.1993), which states: "Restitution—recovery of benefits conferred—is permitted to prevent unjust enrichment. Restitution is an important remedy in connection with contracting." BTA argues this language indicates an action for unjust enrichment may lie even if the parties had an express contract that was not breached. However, the heading of the above section quoted from Dobbs is "Money Awards as Restitution for Breach of Contract." Dobbs is addressing restitution as an element of damages for *breach of contract,* not the separate equitable remedy for unjust enrichment based upon quasi-contract.

[¶ 41] Finally, we reiterate our conclusion in *Apache,* 1999 ND 247, ¶ 15, 603 N.W.2d 891:

> [The producers'] reduced income resulted from [their] use of a percentage of proceeds as a pricing factor in [their] agreements with Koch, which contemplated increases or decreases in gas prices. Where the impoverishment results from a valid contractual arrangement made by a party, the result is not contrary to equity.

[¶ 42] We conclude the district court did not err in dismissing BTA's unjust enrichment claim against Koch.

E

[¶ 43] In resolving BTA's breach of contract and unjust enrichment claims against Koch, we are mindful of the unique circumstances presented in this case. BTA seeks to recover damages when it is clear it has suffered no "loss" under its contract with Koch. BTA received the full benefit of its bargain—75 percent of the proceeds Koch received upon sale of the processed gas. Any "loss" suffered by the producers is a result of their voluntary choice to enter into percentage-of-proceeds contracts, which envisioned the possibility of lower prices. The Koch–Sinclair contract cited by BTA expressly contemplated the gas might be sold to someone other than MDU, and made provisions for the parties' rights in that event. For example, the Sinclair contract provided, if the producer was dissatisfied with sales of gas to an entity other than MDU, the producer could direct Koch to discontinue such sales.

[¶ 44] Simply put, the producers entered into a contract with Koch and received full performance under the terms of that contract. Any "loss" they suffered directly resulted from their decision to enter into the percentage-of-proceeds contracts, not from any wrongdoing by Koch.

VI

■■■ [¶ 45] BTA argues the district court erred in granting summary judgment dismissing its breach of contract claim against Koch based upon sale of liquid hydrocarbons from its gas.

[¶ 46] In addition to receiving a percentage of the proceeds from the processed natural gas, the producers' contracts with Koch provided the producers would also receive a percentage of the proceeds from the sale of liquid hydrocarbons extracted from the gas they sold to Koch. BTA contends Koch sold these liquid hydrocarbons to its own subsidiaries and affiliates for less than market price, resulting in losses to some of the producers. BTA claimed this was a breach of contract and sought an accounting for the liquid hydrocarbons sold under the producers' contracts with Koch. On Koch's motion for summary judgment, the district court determined BTA had failed to raise a genuine issue of material fact on the liquid hydrocarbons claim and granted summary judgment dismissing the claim.

■■■ [¶ 47] Once a party seeking summary judgment has met its initial burden of showing no genuine issue of material fact exists, the opposing party may not simply rely upon its pleadings or upon unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact. *Anderson v. Meyer Broadcasting Co.*, 2001 ND 125, ¶ 14, 630 N.W.2d 46. The resisting party must draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact. *Id.* Summary judgment is appropriate against a party that fails to establish the existence of a factual dispute on an essential element of its claim and on which it will bear the burden of proof at trial. *Id.* at ¶ 15.

[¶ 48] BTA argues paragraph 8 of the affidavit of its expert, Carol Freedenthal, raised material issues of fact on its claim Koch had transferred liquid hydrocarbons to its subsidiaries or affiliates for less than market value. Freedenthal prefaces this paragraph by noting "my observations and

analysis are only preliminary at this point." Freedenthal then states:

Koch is accepting less than market prices for the liquid products and thus short changing the Producers from moneys owed to them.... In selling for less than market acceptable prices, Koch may be giving its so-called subsidiary and affiliated companies product at lower than market prices and at the same time, using its affiliates and subsidiaries for Koch's additional profit and abuse of the Producers.

[¶ 49] Affidavits offered in opposition to a motion for summary judgment must set forth specific facts showing there is a genuine issue for trial. N.D.R.Civ.P. 56(e); *Ellingson v. Knudson,* 498 N.W.2d 814, 818 (N.D.1993). Affidavits containing conclusory statements unsupported by specific facts are insufficient to raise a material factual dispute. *Fetch v. Quam,* 2001 ND 48, ¶ 19, 623 N.W.2d 357; *Norwest Mortgage, Inc. v. Nevland,* 1999 ND 51, ¶ 4, 591 N.W.2d 109; *Resolution Trust Corp. v. Gosbee,* 536 N.W.2d 698, 701 (N.D.1995); *Federal Land Bank of St. Paul v. Asbridge,* 414 N.W.2d 596, 598 (N.D.1987). Mere speculation will not defeat a motion for summary judgment. *Ellingson,* at 818.

[¶ 50] Freedenthal's affidavit is conclusory and speculative. He expressly indicates his "observations and analysis are only preliminary" and "Koch *may* be giving its so-called subsidiary and affiliated companies product at lower than market prices." Freedenthal's conjecture and speculation is unsupported by specific facts detailing what the market price was and how these sales deviated from that market price. Freedenthal does not provide a single example of a below-market sale relating to a specific contract or specific producer. Freedenthal's affidavit does not provide competent admissible evidence

raising a genuine issue of material fact on the sale of the liquid hydrocarbons.

[¶ 51] BTA also cites other evidence showing Koch used interaffiliate transfers as "sales" of liquid hydrocarbons, paid its own affiliates to transport the liquid hydrocarbons, and charged various fees through its affiliates and subsidiaries, which lowered the price the producers ultimately received for the liquid hydrocarbons. However, without a showing that the ultimate amount received for specific sales was less than would have been received in sales to third parties at market price, this evidence does not create an issue of material fact on the necessary elements of BTA's breach of contract claim.

[¶ 52] BTA suggests it was unable to provide more specific evidence on the liquid hydrocarbons claim because it had not yet completed discovery and Koch had "stonewalled" some of BTA's discovery requests. BTA did not move under N.D.R.Civ.P. 56(f) for a continuance to conduct further discovery to develop additional evidence to oppose the motion for summary judgment. The possibility that further discovery will yield evidence favorable to a party opposing summary judgment is not a ground to deny the motion when the party has failed to invoke N.D.R.Civ.P. 56(f). *Opp v. Source One Mgmt., Inc.,* 1999 ND 52, ¶ 11, 591 N.W.2d 101; *American State Bank and Trust Co. v. Sorenson,* 539 N.W.2d 59, 62 (N.D.1995); *Hummel v. Mid Dakota Clinic, P.C.,* 526 N.W.2d 704, 708 (N.D.1995). Because BTA did not comply with N.D.R.Civ.P. 56(f), the alleged incomplete state of discovery provides no basis to reverse the summary judgment. *Hummel,* at 708.

[¶ 53] BTA had ample opportunity to conduct discovery. When Koch moved for partial summary judgment in August 1999, the case had been in litigation and discov-

ery had been proceeding for nearly two and a half years. Another year passed before the court finally entered its order for judgment granting partial summary judgment dismissing the liquid hydrocarbons claim against Koch. Under these circumstances, including its failure to invoke N.D.R.Civ.P. 56(f), BTA cannot now be heard to suggest its insufficient response to the motion for summary judgment was due to an inadequate opportunity to conduct discovery.

[¶ 54] We conclude the court did not err in granting summary judgment dismissing the liquid hydrocarbons claim.

## VII

[¶ 55] Exxon Corporation argues the district court applied the wrong statute of limitations governing its separate claim against Koch for breach of contract for incorrectly calculating "treating fees."[3]

[¶ 56] Under Exxon's contract with Koch, Koch was entitled to deduct certain treating fees from the amount it paid Exxon upon resale of the processed gas. Exxon alleges Koch miscalculated the treating fees, resulting in overcharges against Exxon's share of the proceeds from the processed gas. The district court concluded Koch had breached the contract by using an improper method to calculate treating fees, resulting in an underpayment to Exxon for its gas.

[¶ 57] In calculating damages for the breach, the court determined the contract was governed by the Uniform Commercial Code (N.D.C.C. Title 41) and applied the four-year statute of limitations of N.D.C.C. § 41–02–104 (U.C.C. § 2–725). The court further determined Exxon filed its claim on September 3, 1997, when the plaintiffs, including Exxon, moved for leave to file an amended complaint. The court according-

ly awarded damages incurred after September 3, 1993, in the amount of $404,122.34.

### A

[¶ 58] Exxon argues its contract with Koch was not a "contract for sale" under the U.C.C. and the four-year statute of limitations under N.D.C.C. § 41–02–104(1) (U.C.C. § 2–725) should not have applied. Exxon contends the general six-year statute of limitations for non-U.C.C. contracts found in N.D.C.C. § 28–01–16(1) should have applied.

[¶ 59] The U.C.C., as adopted in North Dakota, applies to a contract for sale of natural gas. See N.D.C.C. § 41–02–05(2) (U.C.C. § 2–105); JN Exploration & Prod. v. Western Gas Res., Inc., 153 F.3d 906, 913 (8th Cir.1998); Koch, 988 F.2d at 1534; see also Dawn Enters. v. Luna, 399 N.W.2d 303, 306 n. 3 (N.D. 1987). Section 41–02–104(1) (U.C.C. § 2–725) provides "[a]n action for breach of any contract for sale must be commenced within four years after the claim for relief has accrued."

[¶ 60] "Contract for sale" is defined in N.D.C.C. § 41–02–06(1)(b) (U.C.C. § 2–106): " 'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time." Section 41–02–06(1)(d) (U.C.C. § 2–106) provides: " 'Sale' consists in the passing of title from the seller to the buyer for a price."

[¶ 61] Exxon argues the contract at issue in this case is a gas processing contract for services, and is not a contract for sale under the U.C.C. The contract, however, provides gas will be delivered from Exxon to Koch at metering facilities at or near the wellhead, and "title to said gas and all constituent components therein

---

**3.** Exxon was the only producer that pleaded a "treating fees" claim.

shall pass from [Exxon] to [Koch] at said point(s)." Article VIII of the contract is entitled "PRICE," and provides, in part:

The price to be paid by [Koch] to [Exxon] shall be an amount equal to eighty percent (80%) of the net sales proceeds received for the liquefiable hydrocarbons and residue gas saved and sold which is attributable to [Exxon's] gas as determined in Article V hereof, less the fees attributable thereto.

The contract specifies title to the gas passes from Exxon to Koch at the wellhead, before any processing of the gas takes place, and sets a price for the gas to be paid by Koch to Exxon. *See* N.D.C.C. § 41–02–06(1)(b) and (d) (U.C.C. § 2–106). This is a contract for sale.

[¶ 62] The substantive provisions of the contract are analogous to those in *JN Exploration,* which the United State Court of Appeals for the Eighth Circuit concluded was a contract for sale governed by the U.C.C. under North Dakota law. *JN Exploration,* 153 F.3d at 912–13. The court in *JN Exploration* specifically noted the "producer/processor relationship" in that case was "nearly identical" to the one presented in *Koch,* and the two cases presented "nearly identical facts and an analogous contract." *JN Exploration,* 153 F.3d at 912–13. The producer/processor contracts at issue in *Koch* are the same contracts at issue in this case.

■ [¶ 63] Exxon argues the contract must be for gas processing services, and not a sale, because it is entitled "Gas Processing Agreement" and the parties are identified throughout the contract as "Producer" and "Processor." In determining whether an agreement is a contract for sale governed by the U.C.C., the labels used by the parties to characterize the transaction are not determinative; rather, it is the substance of the transaction and intent of the parties which control. *See*

*American Family Mut. Ins. Co. v. Jepson,* 148 F.3d 954, 955–56 (8th Cir.1998); *Western Enters., Inc. v. Arctic Office Machs., Inc.,* 667 P.2d 1232, 1234 (Alaska 1983); *Lease Finance, Inc. v. Burger,* 40 Colo. App. 107, 575 P.2d 857, 859 (1977). In this case, the substantive provisions of the contract clearly establish a contract for sale.

[¶ 64] Exxon also contends, the fact it had an option to take processed gas rather than cash in payment for its gas indicates this is a service contract, not a contract for sale. Under Article VIII of the contract, entitled "PRICE," Koch was to pay 80 percent of the net sales proceeds it received from the processed gas and liquid hydrocarbons to Exxon as payment for Exxon's raw gas. As an alternative, Exxon had the option to receive 80 percent of the processed gas and liquid hydrocarbons attributable to its gas. In order to exercise this option, Exxon was required to give Koch sixty days written notice. We do not believe this provision changes the basic substantive nature of the contract. The title to the gas still passed to Koch at the wellhead before any processing took place. Article VIII of the contract specified the price to be paid for the gas, giving Exxon the option of having that "price" be paid in processed gas and liquid hydrocarbons. The hallmarks of a contract for sale under N.D.C.C. § 41–02–06 (U.C.C. § 2–106) are present.

[¶ 65] We conclude the court did not err in determining the parties' agreement was a contract for sale governed by the U.C.C., and the four-year statute of limitations under N.D.C.C. § 41–02–104(1) (U.C.C. § 2–725) applied.

B

■ [¶ 66] Exxon contends the district court erred in concluding Exxon first asserted its treating fees claim, for pur-

poses of the statute of limitations, on September 3, 1997.

[¶ 67]   Exxon was not a party when this action began on March 14, 1997.  On June 30, 1997, Exxon filed a motion to intervene as a plaintiff in the action and attached a proposed complaint that included a claim for breach of contract against Koch based upon the disputed calculation of treating fees.  The court granted Exxon's motion to intervene by a written order filed on July 18, 1997.

[¶ 68]   On September 3, 1997, Exxon and the other plaintiffs moved to file an amended complaint, which added new allegations and included Exxon's treating fees claim.  The court granted the motion to amend the complaint on February 18, 1998.

[¶ 69]   The district court ultimately determined Koch had breached its contract with Exxon by improperly calculating treating fees, resulting in a substantial underpayment to Exxon for its gas.  The court concluded Exxon had first asserted its treating fees claim on September 3, 1997, when the plaintiffs moved to amend the complaint, and therefore determined any claim for treating fees arising more than four years prior to that date was barred by the statute of limitations.  On appeal, Exxon argues the court erred in determining the date it first asserted the treating fees claim, contending it adequately raised the claim when it filed its complaint with the motion to intervene on June 30, 1997.

[¶ 70]   The procedure governing intervention is set out in N.D.R.Civ.P. 24(c), which provides in part:

> A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5.  The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.

[¶ 71]   The rule explicitly requires a pleading setting forth the intervenor's claims or defenses be attached to the motion.  Courts construing corresponding federal or state rules have consistently held the filing of a motion to intervene, accompanied by a proper pleading, constitutes the commencement of an action for purposes of the statute of limitations.  *See United States ex rel. Canion v. Randall & Blake,* 817 F.2d 1188, 1192 (5th Cir.1987); *Braxton v. Virginia Folding Box Co.,* 72 F.R.D. 124, 126 (E.D.Va.1976); *Securities and Exch. Comm'n v. Keller Bros. Sec. Co.,* 30 F.R.D. 532, 533–34 (D.Mass.1962); *Jack v. Travelers Ins. Co.,* 22 F.R.D. 318, 319 (E.D.Mich.1958), *aff'd,* 277 F.2d 736 (6th Cir.1960); *Ioannou v. Ivy Hill Park Section Four, Inc.,* 112 N.J.Super. 28, 270 A.2d 295, 301–02 (1970); *Callaway v. Ryan,* 67 N.M. 283, 354 P.2d 999, 1001–02 (1960); *Engert v. Peerless Ins. Co.,* 53 Tenn.App. 310, 382 S.W.2d 541, 550 (1964); 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1914 (2d ed.1986); *see also Farris v. Sears, Roebuck & Co.,* 415 F.Supp. 594, 595–96 (W.D.Ky.1976) (service of motion to intervene with attached pleading is not commencement of an action, but tolls the statute of limitations).

[¶ 72]   These courts have concluded, if the motion to intervene is subsequently granted, the attached pleading will be considered effective from the time the motion was originally filed for purposes of the statute of limitations.  In the seminal case *Jack v. Travelers Ins. Co.,* 22 F.R.D. at 319, the court explained:

> Applicants were required under Rule 24 to seek leave before they might file their complaint in intervention. . . . Who can possibly predict what length of time might elapse between the filing of a

motion to intervene and a final order granting it? There are time factors to be taken into consideration—a hearing date in open court dependent upon the condition of the docket when the motion is filed, the possibility of counsel requesting time for the filing of briefs, the inability of the Court to study the briefs at the exact moment of their delivery, and a number of other factors which are obvious to those accustomed to processing motions. No matter how diligent counsel for an applicant intervenor may be, we do not perceive what guarantee can be available that there will be an opportunity to file the complaint prior to the running of the statute.

[¶ 73] The United States Court of Appeals for the Fifth Circuit further explained the rationale for the rule in *Randall & Blake*, 817 F.2d at 1192 (footnote omitted):

> We have found, however, almost unanimous agreement among the district courts addressing the question: the filing of the motion for intervention, and not the later approval of the motion and actual filing of the complaint, determines the commencement of the action for purposes of the statute of limitations. We find this rule to be the only sensible one and adopt it as our own. Once the party seeking intervention has filed its motion to intervene with its proposed complaint, it has done all it can do, in a timely sense, to commence its action. The complaint cannot be filed until the court approves the intervention. Here, Geer Construction filed its motion to intervene well before the expiration of the limitation period. The district court did not act on that motion, however, for over fourteen months. We see no justification for a rule that would bar a meritorious action as untimely because of a congested court docket or other circum-

stances over which the claimant has absolutely no control.

[¶ 74] We agree with the rationale of these cases. Because the rule requires that a copy of the intervening party's pleading accompany the motion and be served upon all of the parties, it would be superfluous to require a subsequent motion explicitly requesting amendment of the pleadings after the court grants the motion to intervene. We will not interpret our rules in a manner that would result in unnecessary, duplicative procedures.

[¶ 75] We agree with the courts that hold an intervenor's action is begun, for purposes of the statute of limitations, upon the making of a proper motion under Rule 24, accompanied by an appropriate pleading, which is subsequently granted by the court. Accordingly, we conclude the trial court erred in determining Exxon first asserted its treating fees claim against Koch on September 3, 1997, when the plaintiffs moved to amend the complaint. Exxon's treating fees claim was begun, for purposes of the statute of limitations, when it filed and served its motion to intervene under N.D.R.Civ.P. 24. We therefore reverse and remand for recalculation of damages to Exxon on its treating fees claim.

## VIII

[¶ 76] We have considered the remaining issues raised by BTA and find them to be either without merit or unnecessary to our decision. We do not answer questions that are not necessary to the determination of an appeal. *E.g., Johnson v. Johnson*, 2001 ND 109, ¶ 13, 627 N.W.2d 779.

[¶ 77] We reverse and remand that part of the judgment awarding Exxon damages on its treating fees claim for recalculation of damages in accordance with

this opinion. In all other respects the judgment is affirmed.

[¶ 78] WILLIAM A. NEUMANN, acting C.J., GERALD G. GLASER, Surrogate Judge, CAROL RONNING KAPSNER and MARY MUEHLEN MARING, JJ., concur.

[¶ 79] The Honorable GERALD G. GLASER, Surrogate Judge, sitting in place of VANDE WALLE, C.J., disqualified.