[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
INTRODUCTION
The plaintiff Lenkowski, Lonergan Company, a general partnership in Waterbury, Connecticut, that provides public accounting services, brings this action against the defendant Christopher McKenna, a former employee and partner of the firm, for breach of contract and for conversion. The defendant denies that any such breach of contract or conversion occurred and counterclaims for breach of contract, alleging that the plaintiff failed to pay the defendant a promised bonus of $10,000. Trial to the court occurred over the course of three days. The court heard from partners and former partners of the plaintiff, and from the defendant.
 FACTS
From 1989 through 1995 the defendant, who is a certified public accountant (CPA), was an employee of the plaintiff accounting firm. The work of the firm was primarily devoted to auditing work and business related accounting, including preparing individual and business tax returns for its clients. On June 20, 1989, when the defendant was hired as a staff accountant, he signed a written employment agreement containing the following clauses:
¶ 3. Employee shall devote his entire time, attention, and energies to the business of LL Co., and shall not during the term of this Agreement be engaged in any other business activity whether or not such business activity is pursued for gains, profit or other pecuniary advantage . . . unless mutually agreed in writing as an addendum to this Agreement . ..
¶ 6 . . . [LL Co.'s] client list shall include clients obtained by the Employee during the period of his employment. All fees obtained from any LL Co. client shall belong to LL Co. CT Page 3874
Beginning very early in his employment relationship with the plaintiff, the defendant began to develop a small accounting practice outside of his employment with the firm. His clients were largely individuals and small businesses who needed very basic bookkeeping and accounting services to organize their financial records and to file tax returns. Although this outside practice developed slowly, by 1994 the defendant had annual gross receipts of $33,882 from this business. Furthermore he maintained a telephone listing in the yellow pages of his home area, Milford, Connecticut, in order to solicit clients for his separate business. The defendant took no steps to make any of the partners in the plaintiff firm aware of this outside practice, and he never requested permission to perform any such outside services.
In late 1995, two factions developed about the proper direction and structure of the plaintiff firm. Among some of the existing partners there was a move to elevate the defendant to the status of partner. A compromise was reached to make the defendant an income partner, rather than an equity partner, in the firm. The decision was communicated to the defendant on January 19, 1996. The defendant, who as an employee had been paid a base salary of $59,000 plus an $8000 bonus the previous year (1995), was to be compensated with a guaranteed minimum annual payment of $90,000, paid out in increments during the course of the year. The plaintiff agreed to give consideration for an additional annual bonus payment to the defendant above the $90,000. Finally, the plaintiff agreed to purchase a car for the defendant, provided the cost of the car not be over $25,000 and that it be purchased from one of the firm's car dealership clients. The defendant agreed to these terms and his partnership status and compensation package took effect retroactively to January 1, 1996. On January 31, 1996, with a check for $23,611.44 drawn on the firm's account, the defendant purchased a new 1996 Buick LeSabre. With the consent of the plaintiff and as had been its practice with cars purchased for the other partners, the defendant took title to the car in his own name, and registered and insured the car in his own name, not that of the firm. On the plaintiff's annual tax returns, the plaintiff recorded the defendant's car, and each car purchased by the firm for the other partners, as an asset, subject to depreciation.
During 1996, tensions among the factions of partners at the plaintiff firm increased. A dispute occurred in the summer of 1996 over the amount and frequency of the incremental payouts to the defendant of his guaranteed distribution. Shortly thereafter two of the partners became aware of rumors that the defendant was engaged is a substantial outside accounting practice, which those partners viewed as creating financial and morale issues for the firm. In October and November 1996, the CT Page 3875 plaintiff and the defendant mutually agreed that he would separate from the firm. The defendant eventually formed a CPA firm with other departing partners of the plaintiff.
The plaintiff brought this action in 1997 to recover as damages the amount of receipts or profits the defendant realized from his outside accounting practice, and to recover the Buick or its value, after the defendant failed to return the car upon the plaintiff's demand at the time of the defendant's separation from the firm.[1] The first claim is founded on a breach of the written employment contract; and the second is solely founded upon conversion.
 BREACH OF CONTRACT
The court finds that the defendant breached his contract with the plaintiff for the years 1990-95. The defendant promised that he would devote his professional services exclusively to the plaintiff, and in fact he purposely carried on a professional accounting practice outside of his work for the plaintiff. He did so without the knowledge or consent of the plaintiff or any of its agents.
The defendant's attempts to minimize the size of his outside practice or to distinguish his outside work as not really an accounting practice but rather a tax preparation or a bookkeeping service are unpersuasive. First, the court finds that the defendant utilized such similar skills in his outside practice as to make it indistinguishable from a regular accounting practice. Secondly he held himself out as a certified public accountant in the marketing of his outside practice. Third the court finds that, contrary to his suggestion that his wife did most of the work, the defendant devoted substantial time and energy to developing his outside practice. Finally, in finding a breach of the employment contract, the court notes that the contract obligated him to refrain from "any other business activity."
The court finds no merit to the Special Defense of the defendant that the agreement to make the defendant a partner rescinded or superseded the prior written employment agreement such that any of the existing obligations of the parties under the earlier contract were abrogated or extinguished.
 DAMAGES FOR BREACH OF CONTRACT
Having found that the defendant breached the employment contract, the court turns to the more difficult issue of damages. The plaintiff urges the court to measure damages by the amount of the gross receipts paid to CT Page 3876 the defendant by the clients of his outside practice during the years in which he was in breach of the contract, the sum being $97,000. The plaintiff's theory is that this $97,000 should have been income to the plaintiff, so that it is a reasonable measure of the plaintiff's loss due to the defendant's breach.
The defendant opposes the plaintiff's proposed measure of damages on the grounds that such a sum does not represent the loss to the plaintiff. The defendant argues that it is the loss to the plaintiff, not the breaching party's gains, that is the proper measure of damages for breach of an employment contract. See, Robert S. Weiss Associates,Inc. v. Wiederlight, 208 Conn. 525, 541-42 (1988). Even outside the context of employment agreements, the general purpose of damages for breach of contract is to protect the "expectation interest" of the non-breaching party. Restatement, Second. Contracts § 344.
Ordinarily, when a court concludes that there has been a breach of contract, it enforces the broken promise by protecting the expectation that the injured party had when he made the contract. It does this by attempting to put him in as good a position as he would have been in had the contract been performed, that is, had there been no breach.
Id., comment a.
The defendant has presented credible evidence that the plaintiff would not have accepted the clients for whom the defendant performed work because the amount of annual revenue each generated was too small. Indeed the court finds that it is unlikely that any of the clients in the defendant's outside practice would have been able to retain the plaintiff firm, due to the fact that the type of work performed was entirely routine or due to the fact that the fee such work would have generated would have been relatively small.[2]
Nor can the court measure damages based on the diminished value to the firm of the work the defendant continued to do for it. Despite his outside work, the defendant performed diligently for the plaintiff, devoting substantial hours of work for the plaintiff's clients and receiving excellent performance evaluations during the period of his employment. The court is unable to find from the evidence that the plaintiff suffered any loss as a result of the defendant's breach of the employment agreement.[3]
The question then becomes whether the plaintiff, on the breach of contract claim, can prevail nonetheless. Section 346(2) of the Restatement, Second, Contracts, provides, "[i]f the breach caused no loss CT Page 3877 or if the amount of the loss is not proved . . . a small sum fixed without regard to the amount of loss will be awarded as nominal damages." See also Dobbs, Remedies, § 12.4. The injured party is thus entitled to judgment for nominal damages which may carry with it an award of costs. Id.
Costs are generally awarded if a significant right was involved or the claimant made a good faith effort to prove damages, but not if the maintenance of the action was frivolous or in bad faith.
Restatement, Second, Contracts § 346(2), comment b.
This issue becomes important in this case because of the following clause in the parties' employment contract:
¶ 9 . . . In the event that any legal action is brought by LL Co. to enforce any of the terms or provisions of this Agreement Employee agrees to pay LL Co. all costs and attorneys fees incurred therefor by LL Co. provided it is successful in its action.
This court concludes that the plaintiff's claim for breach of contract, though partly unavailing for want of proof of damages, was neither frivolous nor in bad faith. The proof of the defendant's breach was clear. He derived profit in the thousands of dollars from his breach, even if the plaintiff did not precisely "lose" anything. The plaintiff was rightfully affronted by the discovery of the defendant's recurring and purposeful breach of his promise to the firm not to engage in any outside business practice. This was not a case where the breach was merely "technical" in nature. Cf., Hummel v. Mid Dakota Clinic,P.C., 526 N.W.2d 704, 709 (N.D. 1995). This court finds that, despite the failure of the plaintiff to prove damages, the plaintiff has satisfied the requirements for a judgment in its favor on the breach of contract claim: 1) the vindication of a significant right, 2) a good faith effort to prove damages, and 3) the absence of bad faith in bringing the lawsuit. The plaintiff is entitled to judgment in its favor on the First Count of its complaint in the amount of $1.00. Moreover the plaintiff has proved an entitlement to costs and attorney fees.
 CONVERSION
The plaintiff cannot prevail on the Second Count, its claim against the defendant for conversion of the Buick. The plaintiff's claim does not sound in breach of contract or unjust enrichment. Rather the plaintiff's sole claim is for conversion. Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property CT Page 3878 belonging to another, to the exclusion of the owner's rights. See, Falkerv. Samperi, 190 Conn. 412, 419, 461 A.2d 681 (1983). The ability to prevail on such a claim in this case is entirely dependent on whether the evidence supports a finding of ownership of the car by the plaintiff.
The court finds that the defendant was the owner of the Buick. With the full knowledge and consent of the plaintiff, the defendant negotiated the purchase of the car, took title in his own name, registered the car in his own name, insured it in his own name, and utilized it as both a business and a personal vehicle. It may very well be that the parties had an understanding about how the transaction or ownership would be made to appear to the appropriate taxing authorities, for the benefit of both the plaintiff firm and the individual partner. But the tax treatment of the automobiles in this case is not sufficient to trump all of the other indicia of ownership.
It may also be true that the plaintiff expected the defendant to somehow account for the value of the car in the event the defendant separated from the firm, particularly in light of the fact that the plaintiff had paid for the car. But the evidence is insufficient to establish that there was any agreement between the parties to transfer the car to the firm or otherwise account for its value upon the defendant's separation. The unilateral unstated expectation of the plaintiff is insufficient here to establish a contract obligating the defendant either to reimburse the plaintiff or transfer title to the firm; and such an expectation is entirely immaterial in the face of all of the evidence indicating that it was the intention of all parties that the ownership of the cars bought by the firm be with the individual partners.[4]
The plaintiff's proof fails as to the Second Count.
 THE COUNTERCLAIM OF THE DEFENDANT
The defendant alleges in his counterclaim that the plaintiff breached an agreement to pay the defendant a $10,000 annual bonus in 1996, his first year as an income partner. This agreement, the defendant alleges, was dependent only upon the plaintiff realizing a profit in 1996. Both sides presented competing evidence about whether the 1996 was a year in which the plaintiff made a profit sufficient to award the defendant a bonus. Moreover, the plaintiff denied that there was a specific contract to pay the defendant a specific amount, and that even if there had been, it was obviously dependent on the defendant remaining a partner at least for the term for which the bonus was "due." CT Page 3879
The court finds for the plaintiff on this issue. The only promise made by the plaintiff was to "consider" giving the defendant a bonus. Such consideration was to be dependent on a number of factors, of which one was the profitability of the firm,[5] and another was the ability of the equity partners to agree among themselves on what any bonus should be. The court finds that any bonus to the defendant as an income partner was to be entirely discretionary on the part of the plaintiff. The defendant's evidence is insufficient to prove that there was ever a definite contractual obligation to pay him a bonus in 1996.
 CONCLUSION
The court finds for the plaintiff on the First Count and awards it the sum of $1.00 from the defendant, and against the plaintiff and for the defendant on the Second Count. The court finds for the plaintiff and against the defendant on the Counterclaim.
The court delays the entry of judgment in accordance with this memorandum, however, to afford the parties a fair opportunity to be heard on the issue of the amount of reasonable attorney fees to be awarded to the plaintiff as part of the judgment. Cf. Paranteau v. Devita,208 Conn. 515, 524, 544 A.2d 634 (1988).
Accordingly, the parties are directed to appear and be heard on April 7 at noon, on the issue of the amount of the plaintiff's attorney fee.
Patty Jenkins Pittman, Judge